309 S.E.2d 342

SHEPHERDSTOWN VOLUNTEER
FIRE DEPT., a Corp.

v.

STATE of West Virginia ex rel. STATE
OF WEST VIRGINIA HUMAN
RIGHTS COMMISSION and Patricia
Waldeck and Judy Pittinger.

BERKELEY SPRINGS
VOLUNTEER FIRE DEPT.

v.

Christine SWAIM, Judy Younker, Linda
Vangosen, and State of W. Va. Human
Rights Commission.

Nos. 15467, 15749.

Supreme Court of Appeals of
West Virginia.

Nov. 10, 1983.

Chauncey H. Browning, Atty. Gen. and Gail Ferguson, Asst. Atty. Gen., Charleston, for appellants in both cases.

Peter L. Chakmakian, Charles Town, for appellee in No. 15467.

Rice, Hannis & Douglas and Richard L. Douglas, Martinsburg, for appellee in No. 15749.

McHUGH, Justice:

These actions, No. 15467 and No. 15749, involving the appellees, Shepherdstown Volunteer Fire Department and Berkeley Springs Volunteer Fire Department (V.F. D.), respectively, present similar issues and have been consolidated for the purpose of argument. Both actions are before this Court upon appeal pursuant to *W. Va. Code*, 29A–6–1 [1964], of the West Virginia Administrative Procedure Act. They arise from the final orders of the Circuit Courts of Jefferson and Morgan Counties wherein the trial courts reversed the findings of the West Virginia Human Rights Commission (hereinafter "Commission") when it determined that the appellees were guilty of unlawful discriminatory practices under The West Virginia Human Rights Act, *as amended, W. Va. Code*, 5–11–1 *et seq.* This Court has before it the petition for appeal, most matters of record and the briefs and oral argument of counsel.[1]

SHEPHERDSTOWN V.F.D.

The action involving the Shepherdstown V.F.D. is before this Court upon the appeal of Patricia Waldeck, Judy Pittinger and the Commission from the final order of the Circuit Court of Jefferson County.

The Shepherdstown V.F.D. is a nonprofit corporation organized and chartered under the laws of this State. At the time of the alleged discriminatory acts, the appellants, Patricia Waldeck and Judy Pittinger, were both over 18 years of age and residents of Jefferson County, West Virginia.

In January, 1977, appellants Waldeck and Pittinger applied for membership in the Shepherdstown V.F.D. In accordance with the fire department's constitution and by-laws, the appellants were interviewed by a review board composed of five male members of the active membership. It was the duty of the review board to ascertain the qualifications of the applicants and make recommendations to the voting membership at the next regularly scheduled meeting. The constitution of the fire department provides that membership is limited to persons 18 years of age or older.

In February, 1977, the appellants, along with one other female, were denied membership in the Shepherdstown V.F.D. by a vote of the active members. At the same meeting, two males were accepted for membership. Neither appellant was given a reason for her denial of membership. Both were informed of the rejection by their respective spouses who are active members of the fire department.

In May, 1977, the appellants were denied an opportunity for reconsideration. On June 11, 1977, the appellants filed complaints with the Commission charging the Shepherdstown V.F.D. "with sex discrimination in places of Public Accommodations, which is in violation of the West Virginia Human Rights Act. . . ." After informal attempts at conference and conciliation failed, the two cases were consolidated and a formal administrative hearing was held in

---

1. It must be noted that this Court has experienced delays due to the incompleteness of the records in both cases. In the action involving the Shepherdstown V.F.D., the record remains incomplete because of the absence of various exhibits not germane to the outcome of the case.

Shepherdstown, Jefferson County, on March 29 and 30, 1979, to determine whether unlawful sex discrimination had occurred.

At the hearing the appellants testified that they had applied for membership in the Shepherdstown V.F.D. at the urging of their respective spouses because of an apparent need in the fire department for qualified emergency medical personnel. They asserted that one month prior to application for membership, they both had successfully completed training to become emergency medical technicians and were duly certified as such by the West Virginia Department of Health. The record also indicates that the Shepherdstown V.F.D. receives approximately 25% of its funding from governmental sources, which includes the Jefferson County Commission, the Town of Shepherdstown, and Shepherd College. The remainder of the fire department's budget is acquired through public solicitation.

Several members of the department indicated that the appellants had been denied membership because their personalities "were incompatible with the efficient operation of the fire department." However, in a final order entered August 20, 1980, the Commission found the Shepherdstown V.F.D. to be a "place of public accommodations" pursuant to *W. Va. Code*, 5–11–3(j) [1981], and thereby subject to the provisions of The West Virginia Human Rights Act, *as amended, W. Va. Code*, 5–11–1 *et seq.* Based upon the evidence, the Commission determined that the appellants had been the victims of unlawful sex discrimination in violation of *W. Va. Code*, 5–11–9(f)(1) [1981] when they were rejected for membership.

As remedial action, the Commission ordered the Shepherdstown V.F.D. to cease and desist further discriminatory practices; to refrain from retaliatory action against any person who opposed such discriminatory practices; to establish and publish a policy against intimidation and harassment; to implement a specified "affirmative action program"; to install appellants Waldeck and Pittinger as full members of the Shepherdstown V.F.D.; and that the prospective receipt of all state and federal funds by the Shepherdstown V.F.D. be contingent upon its compliance with the aforementioned order. In addition, the Commission ordered the Mayor and Town Council of Shepherdstown, along with the officers of the Shepherdstown V.F.D., to file with the Commission periodic sworn statements of compliance for a period of two years following the date of the order.

Pursuant to *W. Va. Code*, 29A–5–4 [1964],[2] the Shepherdstown V.F.D. sought judicial review of the findings of the Commission in the Circuit Court of Jefferson County contending that the fire department is not a "place of public accommodations" under The West Virginia Human Rights Act; that the Commission exceeded its remedial authority when it ordered officials of Shepherdstown to submit periodic statements of compliance, and that public funds be withheld pending such compliance. It further argued that the rejection of appellants Waldeck and Pittinger on the basis of their "incompatible" personalities was not unlawful discrimination.

In March, 1981, the Circuit Court of Jefferson County stayed the order of the Commission pending the appeal, and in a final order entered May 13, 1981, the trial court "overruled, vacated and held for naught" the decision of the Commission and concluded that the Shepherdstown V.F.D. is a "private club" under *W. Va. Code*, 5–11–19 [1971],[3] and therefore, exempt from the

---

**2.** *W. Va. Code,* 29A–5–4(a) [1964], provides that "[a]ny party adversely affected by a final order or decision in a contested case is entitled to judicial review thereof under this chapter...."

**3.** *W. Va. Code,* 5–11–19 [1971], provides:
Nothing in this article shall prohibit a private club not in fact open to the public, which as an incident to its primary purpose or pur-

poses provides lodgings which it owns or operates for other than a commercial purpose, from limiting the rental or occupancy of such lodgings to its members or guests of members or from giving preference to its members or guests of members: Provided, that this exemption shall not apply to any private club not in fact open to the public which owns or operates residential subdivisions providing

provisions of The West Virginia Human Rights Act. The court further determined that "[i]n this case, all people are treated equally; they have an unquestioned equal right to *apply* for membership . . .," therefore, appellants Waldeck and Pittinger were not discriminated against due to their sex when they were rejected for membership in the Shepherdstown V.F.D. (emphasis in original).

### BERKELEY SPRINGS V.F.D.

The action involving the Berkeley Springs V.F.D. is before this Court upon the appeal of Christine Swaim, Judy Younker, Linda VanGosen and the Commission from the final order of the Circuit Court of Morgan County.

The Berkeley Springs V.F.D. is an all volunteer, nonprofit corporation organized and chartered under the laws of the State of West Virginia. The appellants, Christine Swaim, Judy Younker and Linda Van-Gosen, at the time of the alleged discriminatory acts, were all over 18 years old and residents of Morgan County, West Virginia.

On September 26, 1977, appellants Swaim, Younker, and VanGosen applied for membership in the Berkeley Springs V.F.D. along with three other applicants, two of whom were also female. At the time of their applications, the constitution of the fire department provided that an applicant for membership "must be a male citizen of good repute, in good health, at least eighteen years of age, a resident of Morgan County, W.Va.; familiar with general firefighting practices and the correct operation of this Department's equipment." In compliance with this provision, the applications of the appellants were returned without consideration or explanation. At that same meeting, a male applicant was accepted for membership in the fire department.

In November, 1977, the constitution and by-laws of the Berkeley Springs V.F.D.

were amended to delete the restriction of membership to males only. However, at the November meeting, the members of the fire department voted to deny appellants' second application for membership by a wide margin.

In December, 1978, after informal attempts at resolution, the appellants filed complaints with the Commission charging "the Berkeley Springs Volunteer Fire Department with sex discrimination in a place of public accommodations which is a violation of the West Virginia Human Rights Act." Upon investigation, the Commission found merit in the allegations of the appellants and after informal efforts at conference and conciliation failed, the cases were consolidated and scheduled for formal administrative hearing.

The hearing, held in Berkeley Springs,[4] Morgan County, on March 26 and 27, 1979, revealed that the membership of the Berkeley Springs V.F.D. is totally male. Among the reasons offered for the rejection of the appellants as members was that they did not desire to perform all of the firefighting functions of the department and that there was a belief that a husband and wife relationship in the department would be detrimental to its operation. The record also indicates that the Berkeley Springs V.F.D. receives approximately 30% of its funding from public sources, such as, the Morgan County Commission and the Town of Berkeley Springs and that the balance of the appellee's budget is obtained through public solicitation. Moreover, many expenditures of the fire department and the nomination of its officers are subject to the approval of the Town Council of Berkeley Springs.

In any event, the Commission, by final order entered March 7, 1980, found the Berkeley Springs V.F.D. to be a "place of public accommodations" as defined in *W.Va.Code,* 5–11–3(j) [1981], and thereby subject to the provisions of The West Virgi-

---

lodgings for rental, occupancy or sale, or which provides real estate for sale for the construction of single or multi-unit dwellings.

**4.** The record indicates that the official name of the town where the Berkeley Springs V.F.D. is

located is "Bath," West Virginia, however, it is popularly known as Berkeley Springs, West Virginia.

nia Human Rights Act, *as amended, W.Va. Code,* 5–11–1 *et seq.* Based upon the evidence the Commission further found that appellants had been the victims of unlawful discriminatory practices in violation of *W.Va.Code,* 5–11–9(f)(1) [1981].

The Commission ordered the Berkeley Springs V.F.D. to cease and desist further discriminatory practices; to implement a specified "affirmative action program"; and to install the appellants as full members of the Berkeley Springs V.F.D. at its next regularly scheduled meeting. In addition, the Commission ordered the Mayor and Town Council of Berkeley Springs or the officers of the Berkeley Springs V.F.D. to file with the Commission periodic sworn statements of compliance with the aforementioned order.

Pursuant to *W.Va.Code,* 29A–5–4 [1964],[5] the Berkeley Springs V.F.D. sought judicial review of the findings of the Commission in the Circuit Court of Morgan County contending that the appellee is not a "place of public accommodations" under the West Virginia Human Rights Act, thereby depriving the Commission of jurisdiction, and that there were insufficient facts to support a finding of unlawful sex discrimination on the part of the Berkeley Springs V.F.D.

In a final order entered January 25, 1982, the Circuit Court of Morgan County overruled the findings of the Commission and held that under the definition of public accommodations, as contained in Title II of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000a [1964], the Berkeley Springs V.F.D. is not subject to the provisions of The West Virginia Human Rights

Act, therefore, the Commission was without jurisdiction when it found unlawful sex discrimination.[6] The trial court further held that "[t]he fact that the Berkeley Springs Volunteer Fire Department is supported, in part, by contributions from the town and from State and Federal sources, does not, *ipso facto,* does not [sic] transform it into a place of public accommodation, as defined under the West Virginia Human Rights Act."

The appellants in both cases assign the following errors: (1) the trial courts erred when they determined that the Shepherdstown V.F.D. and the Berkeley Springs V.F.D. are not "place[s] of public accommodations" as defined in *W.Va.Code,* 5–11–3(j) [1981], thereby excluding them from the provisions of The West Virginia Human Rights Act, *as amended, W.Va.Code,* 5–11–1 *et seq.,* and (2) the trial courts erred when they ruled that the appellants were not the victims of unlawful discriminatory practices under *W.Va.Code,* 5–11–9(f)(1) [1981].[7]

### I

The threshold question presented to this Court is whether the Shepherdstown V.F.D. and the Berkeley Springs V.F.D. are "place[s] of public accommodations" under The West Virginia Human Rights Act and thereby subject to its provisions. *W.Va.Code,* 5–11–9 [1981], provides as follows:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security

---

5. *See supra* note 2.

6. *See infra* note 9.

7. In the case involving the Shepherdstown V.F.D., the appellants assign the additional error that the Circuit Court of Jefferson County erred when it granted a stay of the Commission's order withholding public funds from the fire department pending compliance with its order. In support thereof, the appellants argue that the trial court erred in granting the stay because the withholding of such public funds by the Commission is within the remedial powers of the Commission under *W.Va.Code,* 5–11–10 [1971].

However, the order of the Commission was not stayed by the trial court because it was not within the power of the Commission but because of its potential for irreparable harm to the public pending the appeal. Therefore, the issue is not whether such a withholding of funds is within the remedial powers of the Commission but whether the trial court had the power or authority to grant the stay.

It is clear under *W.Va.Code,* 29A–5–4(c) [1964], that upon proper petition to the court when seeking judicial review of a final order of an administrative agency, "[p]ending the appeal, the court may grant a stay or supersedeas upon such terms as it deems proper."

regulations established by the United States or the State of West Virginia or its agencies or political subdivisions:

....

(f) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to:

(1) Refuse, withhold from or deny to any individual because of his race, religion, color, national origin, ancestry, sex, age, blindness or handicap, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of such place of public accommodations....

The phrase "place of public accommodations" is defined by *W.Va.Code*, 5–11–3(j) [1981], as "any establishment or person, as defined herein, including the state, or any political or civil subdivision thereof, which offers its services, goods, facilities or accommodations to the general public, but shall not include any accommodations which are in their nature private...." [8]

The appellants contend that the appellee volunteer fire departments are "place[s] of public accommodations" under The West Virginia Human Rights Act because in West Virginia, volunteer fire departments are created and regulated pursuant to statute and because the appellees receive up to 30% of their funding from governmental sources and the balance from public solicitation. The appellees argue, on the other hand, that The West Virginia Human Rights Act is patterned after the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000a *et seq.*, therefore, this Court should follow the definition of a "place of public accommodations" as provided therein. The appellees contend that under this definition a "place of public accommodations" is limited to inns, hotels, motels, restaurants, theaters and other such establishments.

The West Virginia Human Rights Act, Chapter 5, Article 11, of the West Virginia Code, provides:

It is the public policy of the State of West Virginia to provide all of its citizens equal opportunity for ... equal access to places of public accommodations, .... Equal opportunity in the [area of] ... public accommodations is hereby declared to be a human right or civil right of all persons without regard to ... sex....

....

The denial of these rights to properly qualified persons by reason of ... sex ..., is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

*W.Va.Code*, 5–11–2 [1981]. *See also State Human Rights Commission v. Pauley*, 158 W.Va. 495, 212 S.E.2d 77 (1975); *Currey v. State of West Virginia Human Rights Commission*, W.Va., 273 S.E.2d 77 (1980). *W.Va.Code*, 5–11–15 [1967], further provides that "[t]he provisions of this article shall be liberally construed to accomplish its objectives and purposes."

Accordingly, this Court has consistently interpreted the West Virginia Human Rights Act broadly. In *State Human Rights Commission v. Pauley, supra*, we determined that the Commission, when acting under its statutory authority, may award monetary damages to a victim of unlawful discrimination upon proper showing of loss. In that case we stated:

If our society and government seriously desire to stamp out the evil of unlawful discrimination which is symptomatic of unbridled bigotry, and we believe they do, then it is imperative that the duty of enforcement be accompanied by an effective and meaningful means of enforcement. The forceful language used by the Legislature mandates the eradication of unlawful discrimination.

---

**8.** It is uncontested that the Shepherdstown V.F.D. and the Berkeley Springs V.F.D. fall within the definition of a "person." "The term 'person' means one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons...." *W.Va.Code*, 5–11–3(a) [1981].

158 W.Va. at 499–500, 212 S.E.2d at 79. *See also West Virginia Human Rights Commission v. United Transportation Union,* 167 W.Va. 282, 280 S.E.2d 653 (1981) (Union may be liable for discriminatory collective bargaining agreements); *Currey v. State of West Virginia Human Rights Commission, supra,* (Commission has statutory and nondiscretionary duty to proceed to formal hearing upon the failure of informal conference and conciliation efforts); *State of West Virginia Human Rights Commission v. Pearlman Realty Agency,* 161 W.Va. 1, 239 S.E.2d 145 (1977) (Commission may award incidental damages to complainant for humiliation, embarrassment, mental distress and loss of personal dignity without proof of loss).

No courts have considered the exact issue presented to this Court. However, volunteer fire departments have been held subject to anti-discrimination legislation for various reasons. In *Everett v. Riverside Hose Company No. 4, Inc.,* 261 F.Supp. 463 (S.D.N.Y.1966), the United States District Court for the Southern District of New York determined that a volunteer fire department was subject, *inter alia,* to the restrictions of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §§ 2000a *et seq.,* because of its extensive governmental connections, such as, incorporation under the laws of New York, use of property belonging to the local governing body and its statutory right to engage in public fund raising. 261 F.Supp. at 469.

Similarly, in *Williams v. Rescue Fire Company, Inc.,* 254 F.Supp. 556 (D.Md. 1966), the United States District Court for the District of Maryland held that the recreational arena and swimming pool of a volunteer fire department were public accommodations under the definition contained in Title II of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §§ 2000a *et seq.*[9] The Court in *Williams* relied upon the facts that the volunteer fire department was a nonprofit corporation organized under the laws of Maryland, that the fire department used county and municipal resources to help construct the recreational

facilities and that the fire department received a substantial portion of its operational funding from the local governing bodies. For other cases subjecting volunteer fire departments to anti-discrimination legislation *see Hebard v. Basking Ridge Fire Co. No. 1,* 164 N.J.Super. 77, 395 A.2d 870 (1978) (Found volunteer fire department to be an "employer" for purposes of a civil rights statute); *Blair v. Mayor and Council, Borough of Freehold,* 117 N.J.Super. 415, 285 A.2d 46 (1971) (Found volunteer fire department to be political subdivision of state and thereby under the jurisdiction of the Division of Civil Rights).

In West Virginia, volunteer fire departments are created and extensively regulated under our statutes. For example, *W.Va.Code,* 8-15-1 [1969], provides that "every municipality shall have plenary power and authority to ... provide for the organization, equipment and government of volunteer fire companies ..." and the appointment of its officers. In addition, *W.Va.Code,* 8-15-4 [1969], prescribes the minimum and maximum number of persons who may form themselves into a volunteer fire department and the method of formation. The same statute further provides that "[a] volunteer fire company shall be subject to the authority of the governing body."

Moreover, *W.Va.Code,* 8-15-5 [1969], prescribes the minimum number of meetings that a volunteer fire department shall hold and mandates the filing of written reports with the governing body on the condition of equipment and attendance. West Virginia law also provides for the dissolution of volunteer fire departments, *W.Va.Code,* 8-15-6 [1971], and their incorporation as nonprofit organizations under the general corporation laws of the State. *W.Va.Code,* 8-15-7 [1969].

*W.Va.Code,* 8-15-8 [1969], authorizes any municipality to "contribute to the support of its volunteer fire company by providing a firehouse, fire-fighting equipment, necessary paid personnel and incidental re-

---

**9.** 42 U.S.C. § 2000a [1964] limits a "place of public accommodation" to inns, hotels, restau- rants, gasoline stations, theaters and other similar establishments.

quirements to maintain such company upon an efficient basis." Such volunteer fire departments are "eligible to receive revenues allocated from the municipal pensions and protection fund ..." upon meeting certain qualifications, *W. Va. Code,* 8–15–8a [1981], and *W. Va. Code,* 8–15–8b [1981], prescribes the priority for such expenditures.

Finally, *W. Va. Code,* 29–3–9(d) [1976], provides that "[t]he formation of any new fire department, including volunteer fire departments, shall require the concurrence of the state fire commission. The state fire commission shall develop a method of certification which can be applied to all fire departments and volunteer fire departments." The state fire commission has also been directed to coordinate safety programs with the various fire departments around the State including volunteer fire departments. *W. Va. Code,* 29–3–11(b) [1978].

In addition to the above statutory regulation, the appellees in the actions now before us receive a portion of their funding from governmental sources. In the case of the Shepherdstown V.F.D., it is undisputed that the fire department receives approximately 25% of its funding from public sources and the remainder from public solicitation. The testimony of the department's treasurer revealed that the volunteer fire department annually receives money from the Jefferson County Commission and the Town of Shepherdstown. The Shepherdstown V.F.D. also receives equipment from Shepherd College in consideration for fire protection. Furthermore, the fire department participates in the Jefferson County Communication System which is sponsored by the Jefferson County Commission and involves the use of communication equipment purchased with public funds.

With respect to the Berkeley Springs V.F.D., the record indicates that the fire department receives approximately 30% of its annual budget from various governmental sources such as the Morgan County Commission and the Town of Berkeley Springs. The fire department members are covered by Workers' Compensation and the vehicles of the department are exempt from license registration. In addition, during the period of the alleged discriminatory acts, the volunteer fire department was under the control of the Town of Berkeley Springs according to the fire department's constitution and by-laws. The same constitution requires that the names of all nominees for officers of the department be submitted to the Town of Berkeley Springs for its approval and that the Town of Berkeley Springs shall have the power to audit the financial records of the fire department.

Consistent with the constitution and by-laws of the fire department, the municipal ordinances of the Town of Berkeley Springs provide for the formation of the appellee volunteer fire department, and testimony indicates that the town is required to approve the expenditures of the department over $500. Moreover, the Town of Berkeley Springs allocates money to the fire department in its annual budget and pays for the water the fire department consumes from its hydrant system.

As noted above, the balance of the funding of both volunteer fire departments is acquired through public solicitation. Both fire departments hold various fund raising events throughout the year that are open to the general public. It is clear from the record that the membership dues in both organizations are nominal compared to the annual expenditures of the fire departments.

■ Based upon the above principles, the Shepherdstown V.F.D. and the Berkeley Springs V.F.D. are not exempt from the provisions of The West Virginia Human Rights Act. *W. Va. Code,* 5–11–3(j) [1981], defines a "place of public accommodations" as "any establishment or person, as defined herein, including the state, or any political or civil subdivision thereof, which offers its services ... to the general public, but shall not include any accommodations which are in their nature private...." The extensive statutory regulation and the public funding of the fire departments easily leads to the conclusion that volunteer fire departments are quasi-governmental bodies that provide

services to the general public and are, therefore, "place[s] of public accommodations" under our broad definition above. As the court stated in *Everett, supra,* the fire department's position may "have some validity if we were dealing with a purely social or benevolent organization occupying or utilizing private property and performing no governmental or quasi-governmental function or receiving no governmental assistance." 261 F.Supp. at 467. In the two cases before us, the appellee fire departments cannot be characterized as a "private club." *See supra* note 3.

For the foregoing reasons, we hold that a volunteer fire department, organized and operated pursuant to the laws of the State of West Virginia, and which receives funding from public sources, is a "place of public accommodations" as defined by *W. Va. Code,* 5–11–3(j) [1981], and is thereby subject to the provisions of The West Virginia Human Rights Act, *as amended, W. Va. Code,* 5–11–1 *et seq.* As such, the Circuit Courts of Jefferson and Morgan Counties erred when they ruled that the Shepherdstown V.F.D. and the Berkeley Springs V.F.D. are not "place[s] of public accommodations" under The West Virginia Human Rights Act and, thus, exempted them from its proscription of unlawful discriminatory practices.

## II

■ We must now determine whether the Circuit Courts of Jefferson and Morgan Counties erred when they ruled that the appellants in both actions were not the victims of unlawful discriminatory practices under *W. Va. Code,* 5–11–9(f) [1981]. Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

If such standards are not present, the reviewing court may affirm the order or decision of the agency or remand the case for further proceedings. *See also West Virginia Human Rights Commission v. United Transportation Union,* 167 W.Va. 282, 280 S.E.2d 653 (1981); *City of Huntington v. State Water Commission,* 137 W.Va. 786, 73 S.E.2d 833 (1953); *State ex rel. Staley v. The County Court of Wayne County,* 137 W.Va. 431, 73 S.E.2d 827 (1952); *See generally* 73A C.J.S. *Public Administrative Law and Procedure,* §§ 213–226 (1983); 2 Am.Jur.2d *Administrative Law* § 751 (Cum.Supp.1983).

■ In both cases before this Court, the appellee fire departments do not challenge the findings of facts as made by the Commission in their respective cases. In any event, we find that such findings of facts are supported by substantial evidence in the records of both actions, therefore, they will be sustained and adopted by this Court for purposes of review.

In both actions before us, the Commission relied upon *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), when it concluded that the appellants of both cases had been the victims of unlawful discriminatory practices under The West Virginia Human Rights Act. In *Green* the United States Supreme Court has established evidentiary standards whereby complainants in actions pursuant to Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §§ 2000e *et*

seq.,[10] may prove cases of unlawful employment discrimination.

This framework as set forth in *Green* is best capsulized in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), where the United States Supreme Court stated:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' (citation omitted). Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. (citation omitted).

450 U.S. at 252–53, 101 S.Ct. at 1093, *citing McDonnell Douglas Corp. v. Green, supra.*

In *Green*, the United States Supreme Court determined that a prima facie case of employment discrimination may be established:

> by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. (footnote omitted).

411 U.S. at 802, 93 S.Ct. at 1824. *See also United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Bd. of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

We adopt the framework of *Green* and its progeny and hold that in an action to redress unlawful discriminatory practices in employment and access to "place[s] of public accommodations" under The West Virginia Human Rights Act, *as amended*, W.Va.Code, 5–11–1 *et seq.*, the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination, which burden may be carried by showing (1) that the complainant belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection, the respondent continued to accept the applications of similarly qualified persons. If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

It should be noted that the burden of persuasion never shifts from the complainant to the respondent in these actions. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. If the respondent meets this rebuttal burden, it is incumbent upon the Commission to make the ultimate

---

**10.** Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq.*, prohibits various unlawful employment practices when based upon an "individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2 [1972].

determination whether there was intentional discrimination on the part of the respondent. *Aikens*, 103 S.Ct. at 1482.

### SHEPHERDSTOWN V.F.D.

In the case of the Shepherdstown V.F.D., the Commission found that the appellants, Waldeck and Pittinger, had established a prima facie case of discrimination under the above analysis and that the appellee fire department had failed to meet its rebuttal burden of articulating some legitimate and nondiscriminatory reason for their rejection. Based upon the evidence contained in the record, the Commission determined that the appellants:

> are members of a protected group under the law; that they applied for membership in the Department [Shepherdstown V.F.D.] at a time when members were being accepted; that they were qualified and able to meet the duties imposed on members but were nevertheless rejected; and that membership in the organization remained open and the Respondent continued to accept members.

■ The Commission further found that the appellee fire department failed to present any rebuttal evidence that the personalities of the appellants were "incompatible with the efficient operation of the fire department." As the Commission stated in its findings: "The record is essentially devoid of any testimony showing the relationship, if any, between the efficient operation of a volunteer fire department and the personality of its members." To the contrary, the appellants introduced evidence from members of various other volunteer fire departments, male and female, that the sex of a member in no way impedes the operation of the department nor does their sex inhibit the ability to perform the duties of firefighters or emergency medical personnel. Therefore, we hold that the conclusions and decisions of the Commission, with respect to the Shepherdstown V.F.D., did not prejudice the substantial rights of the fire department in that the conclusions of

the Commission were not contrary to the standards set forth in *W. Va. Code*, 29A–5–4(g) [1964].[11]

### BERKELEY SPRINGS V.F.D.

Similarly, in the case involving the Berkeley Springs V.F.D., the Commission, under the *Green* analysis, determined that the appellants had met their burden of establishing a prima facie case of discrimination and that the appellee fire department had failed to meet its burden of rebuttal. The Commission stated as follows:

> The record clearly shows that the Complainants were women and, thus, were members of a protected group under the law; that they applied for membership in the Fire Department at a time when members were being accepted; that they were qualified and able to meet the duties imposed on members but were nevertheless rejected; and that membership in the organization remained open and the Respondent continued to accept members. Thus, Complainants established a prima facie case in support of their claims, thereby, shifting the onus to Respondent to show some justification for its actions.

The Commission further found "very little evidence that could support a finding that the sex discrimination with regard to membership in the Respondent was justified." The Commission determined that the reasons offered by the fire department for the rejection of the appellants, namely, "that women could not 'keep their cool on a fire scene' " and that a husband and wife team would be detrimental to the operation of the department, were frivolous and unsupported by evidence. The appellee fire department offered no evidence to support these contentions other than the testimony of its own members. The Commission also found it relevant that the Berkeley Springs V.F.D. "has never had a female member." We agree and hold that the decisions and orders of the Commission with respect to

---

11. It should be noted that the record indicates some attempt on the part of the Shepherdstown V.F.D. to remedy the situation when it admitted at least three other women to its membership in the latter part of 1977.

the Berkeley Springs V.F.D., did not prejudice the substantial rights of the appellee fire department in that they were also not contrary to the judicial review standards of *W.Va.Code*, 29A–5–4(g) [1964].

For the foregoing reasons, the final orders of the Circuit Courts of Jefferson and Morgan Counties are hereby reversed and the final orders of The West Virginia Human Rights Commission reinstated.

Reversed.