# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Joseph H. Mayo,**
**Plaintiff Below, Petitioner**

**vs) No. 16-0245** (Cabell County 15-C-302)

**St. Mary's Medical Center, Inc.,**
**Defendant Below, Respondent**

**FILED**

**April 7, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Joseph H. Mayo, by counsel Hoyt Glazer, appeals the February 17, 2016, order of the Circuit Court of Cabell County granting respondent's motion for summary judgment as to petitioner's Family Medical Leave Act[1] (FMLA) interference and retaliation claims and petitioner's claims for gender and disability discrimination under the West Virginia Human Rights Act (WVHRA). Respondent St. Mary's Medical Center (SMMC), by counsel Ancil G. Ramey, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, we find that the circuit court did not err with respect to its award of summary judgment to respondent as to petitioner's claims for interference and retaliation under the FMLA and gender and disability discrimination under the WVHRA. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 12, 2005, petitioner was hired by respondent as a patient-billing clerk.[2] Petitioner worked in that capacity for nine years, until his employment was terminated in 2014. When he was hired, petitioner received a copy of respondent's Handbook and Standards of Behavior.[3] Respondent's Standards of Behavior caution employees to "avoid offensive language or tone . . . understand that body language and actions speak louder than words . . . that "[a]ll communications should be courteous and respectful" and that employees were to "[p]rovide a work environment free of harassment, offensive language, intimidation and hostility."

---

[1] *See* The Family and Medical Leave Act of 1993, 29 U.S.C.A. §§ 2611 through 2617.

[2] In his brief, petitioner describes himself as "an openly gay, African-American male who suffers from depression and anxiety."

[3] Petitioner acknowledged receipt of the Handbook and the Standards of Behavior.

1

Over the course of his employment with respondent, petitioner was the subject of several disciplinary actions. In October of 2008, petitioner was given a verbal warning regarding his absenteeism.[4] Petitioner was warned that if he "violate[d] any other Hospital policy, rules and or regulations" that he would be "subject to appropriate disciplinary action up to and including discharge."

Several months later in March of 2009, petitioner was again disciplined after a number of his co-workers complained of his "inappropriate conduct and behavior."[5] Petitioner received a written warning and was suspended (unpaid) for one day.[6] The written warning advised petitioner that his conduct and behavior reflected "a lack of good judgment" and were "a violation of [respondent's] Standard[s] of Behavior." As a result of petitioner's conduct he, and his entire department, received disciplinary counseling and training.

In December of 2010, respondent observed a "decrease in [p]etitioner's productivity," and as a result began to monitor his job performance, which included an audit of his work e-mails. Respondent observed that, in five workdays between December 23, 2010, and December 30, 2010, petitioner sent 862 non-business related e-mails to a male co-worker, "some of which were sexually charged." Both petitioner and his co-worker were suspended (unpaid) for three days for the "excessive and sexually charged e-mails [exchanged] during work hours." By letter dated January 7, 2011, petitioner was advised that this disciplinary action was his final warning and that he would be immediately terminated if his inappropriate behavior continued. Further, petitioner was advised that the "gravity of [his] misconduct [wa]s sufficient to warrant discharge from employment." Respondent was especially critical of petitioner's sexually charged comments because they occurred after petitioner received counseling and training in a previous disciplinary action.

On September 24, 2012, petitioner was given a second verbal warning regarding excessive absenteeism. Again, petitioner was advised that if he "violate[d] any other Hospital policy, rules and or regulations" he would be "subject to appropriate disciplinary action up to and including discharge."

On August 6, 2014, petitioner was again the subject of a disciplinary action when one of his male co-workers made a verbal complaint regarding petitioner's inappropriate behavior.[7] On

---

[4] Petitioner missed more than six days of work in excess of respondent's standards.

[5] The inappropriate conduct and behavior included comments petitioner made, during a business call, to a male caller about the caller's marital status and saying expletives in front of patients.

[6] Petitioner was advised that continued failure to abide by respondent's policies would "lead to the appropriate disciplinary action, up to and including immediate termination."

[7] The co-worker alleged that petitioner made threats of violence against him and directed sexually charged comments to him.

August 12, 2014, petitioner's co-worker submitted a formal letter of complaint in which he chronicled more than twenty instances of harassment perpetuated by petitioner and threats which became "more aggressive" over time.[8]

On August 9, 2014, petitioner checked himself into HCA Riverpark Hospital, in an effort to seek treatment for depression, and was hospitalized for five days.[9] When petitioner retuned to work on August 18, 2014, he was presented with the written summary of allegations against him and placed on unpaid suspension. Petitioner was provided the opportunity to respond to the written allegations.

On August 25, 2014, petitioner's employment with respondent was terminated. Petitioner was advised, by letter, that his conduct and behavior created an "uncomfortable, unproductive work environment." In this letter, petitioner's prior disciplinary actions were referenced and characterized by respondent as a "pattern of conduct that is unacceptable, and in violation of [respondent's] policies and Standard[s] of Behavior."

In May of 2015, petitioner filed the underlying case against respondent. In his complaint, petitioner alleged that: (1) respondent "wrongfully interfered" in the exercise of petitioner's rights under the FMLA;[10] (2) respondent "retaliated" against petitioner for exercising his FMLA rights; (3) respondent violated the West Virginia Human Rights Act; (4) respondent's discharge of petitioner was "discriminatorily based upon gender;" (5) respondent's discharge of petitioner was "discriminatorily based upon race;"[11] (6) respondent's conduct "constituted the negligent infliction of emotion distress; and (7) respondent's conduct "constituted the intentional infliction of emotion distress." At the conclusion of discovery, petitioner filed a motion for summary judgment on his FMLA interference claim and respondent filed a similar motion for summary judgment on each of petitioner's claims.

In support of his FMLA claim, petitioner argued that between 2006 and 2014, he availed himself of respondent's Employment Assistance Program ("EAP") based on his "subjective

---

[8] In his letter of complaint, the co-worker alleged that petitioner harassed him by monitoring his breaks, lunches, vacation days, and appointments. Further, the co-worker alleged that petitioner left him voicemail messages at work, sent him e-mails, and asked others if they thought the co-worker would cheat on his wife.

[9] Upon checking himself into the hospital, petitioner left a message in respondent's business office general voicemail indicating that he was checking himself into "HCA."

[10] Petitioner contends that respondent failed to provide him with notice of his eligibility or rights to take leave to treat his medical condition under the FMLA.

[11] Following discovery in the underlying action, petitioner withdrew his claim for race discrimination.

reports of depression and anxiety."[12] Respondent countered by citing the deposition testimony of its Human Resources Director who testified that he "had no knowledge of the reasons for [p]etitioner's hospitalization, and that [p]etitioner's depression was irrelevant to the decision to discharge him, which was based upon conduct wholly unrelated to depression." Respondent notes that petitioner was not discharged from his employment until he returned to work after being released by his physician. Further, the parties do not dispute that petitioner never asserted any FMLA rights.

On February 6, 2016, the circuit court heard arguments on the parties' motions and, on February 17, 2016, entered its order denying petitioner's motion for summary judgment and granting respondent's motion for summary judgment. The circuit court found that petitioner did not comply with respondent's notice procedures for making FMLA claims and that his termination was not in any way related to FMLA or missing work while he was hospitalized from August 9 - 13, 2014. Further, the circuit court found that petitioner "testified that he had no evidence to substantiate" his other claims and that "there was no genuine issue of material fact regarding them." As such, the circuit court granted summary judgment on behalf of respondent. It is from the circuit court's February 17, 2016, order that petition now appeals.

In his appeal, petitioner asserts five assignments of error, each relating to the circuit court's ruling on the parties' motions for summary judgment. We have long held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Likewise, we have held that "[t]his Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002). Under Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is only appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

In *Knotts v. Grafton City Hospital*, 237 W.Va. 169, 174, 786 S.E.2d 188, 193, (2016), we reasoned that

> "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). Further, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Johnson v. Killmer*, 219 W.Va. 320,

---

[12] Petitioner contends that, at no time during his meetings with respondent's EAP coordinator, did the coordinator advise him of his FMLA rights. Because he was not advised of his FMLA rights, petitioner claims he did not understand that he could have used FMLA for absences related to his depression without fear of reprisal.

4

323, 633 S.E.2d 265, 268 (2006) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

In his first and second assignments of error, petitioner contends that the circuit court erred in granting respondent's motion for summary judgment as to petitioner's FMLA interference claims and in denying petitioner's competing motion for summary judgment on the same issue. In *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86-87, 122 S.Ct. 1155, 1160, (2002), the United States Supreme Court noted that

> [t]he FMLA's central provision guarantees eligible employees 12 weeks of leave in a 1-year period following certain events: a disabling heath problem; a family member's serious illness; or the arrival of a new son or daughter. 29 U.S.C. § 2612(a)(1) . . . The [FMLA] Act makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" these rights, § 2615 (a)(1), and violators are subject to consequential damages and appropriate equitable relief. § 2617 (a)(1).

The *Ragsdale* Court found that to sustain an FMLA interference claim, an employee "must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights." However, even after this threshold is met, "§ 2617 provides no relief unless the employee has been prejudiced by the violation." *Ragsdale*, 535 U.S. at 89, 112 S.Ct. at 1161.

In *Ainsworth v. Loudon Cty. School Bd.*, 851 F. Supp.2d 963, 975, (E.D. Va. 2012), the United States District Court for the Eastern District of Virginia noted that

> [t]o state a claim of interference with FMLA rights, the plaintiff must establish that "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Bullock v. Kraft Foods, Inc.*, No. 3:11cv36, 2011 WL 5872898 *4 (E.D. Va. Nov. 22, 2011) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).

In the case sub judice, there is no dispute that petitioner was an eligible employee and that respondent was an employer as defined by the FMLA. The parties disagree as to the remaining elements.[13] However, based on our review of the record herein, we find that even if a

---

[13] Petitioner argues that he was entitled to leave under the FMLA. Conversely, respondent argues that petitioner's depression did not meet the definition of a serious medical illness under the FMLA. Further, petitioner contends that he gave adequate notice of his intent to take FMLA leave by leaving a short telephone message in respondent's general voicemail box advising he was checking into HCA. Respondent disputes that petitioner provided adequate notice. In fact, respondent argues that petitioner acknowledged, during his discovery deposition, that he made no claim for FMLA benefits. As petitioner made no such claim for FMLA protections, it was not possible for respondent to "deny" his request for the same.

cognizable FMLA interference claim existed (establishment of each of the five articulated elements in *Ainsworth*), there was no prejudice to petitioner as required by *Ragsdale*.[14] The record establishes that petitioner was terminated as a direct result of his harassment of a fellow employee and his continued violation of respondent's Standards of Behavior.[15] Petitioner proffered no evidence to establish that his termination was a result of his hospitalization in August of 2014 or his alleged FMLA claim. As such, we find that the circuit court did not err in grating summary judgment to respondent as to petitioner's claim for FMLA interference.

In his third and fourth assignments of error, petitioner argues that the circuit court erred in granting summary judgment to respondent as to petitioner's claims for retaliatory discharge under both the FMLA and WVHRA. Petitioner claims that his employment was terminated in retaliation for seeking FMLA protections. To succeed on an FMLA retaliation claim, a petitioner must

> first make a prima facie showing "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was casually connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). If he "puts forth sufficient evidence to establish a prima facie case of retaliation" and [respondent] "offers a non-discriminatory explanation" for his termination, [petitioner] "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation."

*Yashenko v. Harrrah's N.C. Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006) (citing *Nichols* [*v. Ashland Hosp. Corp.*], 251 F.3d [496,] at 502 [(4th Cir. 2001)]).

Similarly, this Court has long held

> [i]n a retaliatory discharge action, where the plaintiff claims that he or she was discharged for exercising his or her constitutional right(s), the burden is initially upon the plaintiff to show that the exercise of his or her constitutional right(s) was a substantial or a motivating factor for the discharge. The plaintiff need not show

---

[14] Based upon the limited facts and circumstances of this case, we decline to address the disputed elements of petitioner's FMLA interference claim.

[15] As noted by the circuit court in its February 17, 2016, order

> [t]he evidence is clear and uncontroverted: [Petitioner] was warned on October 16, 2008, that if he violated "any other Hospital policy" he would be discharged. He was again warned on March 12, 2009, that if he failed to abide by [Respondent's] policy of each employee having "an environment free of sexual or other harassment," he would be terminated. He was warned a third time – a "FINAL WARNING" – in January 2011, that if he continued to make inappropriate or sexually charged comments, he would be terminated.

that the exercise of the constitutional right(s) was the only precipitating factor for the discharge. The employer may defeat the claim by showing that the employee would have been discharged even in the absence of the protected conduct.

Syl. Pt. 3, *McClung v. Marion Cty. Comm'n*, 178 W. Va. 444, 360 S.E.2d 221 (1987).

Our review of the record herein, leads us to the conclusion that there is no merit to petitioner's allegations of retaliatory discharge or FMLA retaliation. The record reveals that respondent was exceedingly patient with petitioner, who failed to modify his behavior in response to prior disciplinary actions. Petitioner failed to establish that the exercise of his FMLA right was either a substantial or a motivating factor for the termination of his employment. Accordingly, the circuit court did not err in awarding summary judgment to respondent as to petitioner's claims for retaliatory discharge and FMLA retaliation.

In his final assignment of error, petitioner argues that the circuit court erred in awarding summary judgment to respondent as to petitioner's claims of gender discrimination. This Court has held that

[i]n order to make a prima facie case of employment discrimination under the West Virginia Huma Rights Act, W.Va. Code § 5-11-11 *et seq.* (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class[;] (2) That the employer made an adverse decision concerning the plaintiff[; and] (3) But for the plaintiff's protected status, the adverse decision would not have been made.

Syl. Pt. 3, *Conaway v. Eastern Associated Coal Corp.*, 178 W. Va. 164, 358 S.E.2d 423 (1986).

This Court has further held that "the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination." Syl. Pt. 3, in part, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983). If successful, "the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reasons for the rejection." *Id.* If the respondent is successful in "rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination." *Id.*

Again, our review of the record herein establishes that the petitioner failed to produce any evidence that but for his gender, his employment would not have been terminated. The record is replete with evidence of numerous incidents in which petitioner exhibited objectionable and inappropriate workplace behavior in violation of respondent's Standards of Behavior. Such evidence constitutes a legitimate, non-discriminatory reason for respondent's termination of petitioner's employment. Accordingly, we find that the circuit court did not err in awarding summary judgment to respondent on petitioner's claims of gender discrimination.

For the foregoing reasons, we affirm the circuit court's February 17, 2016, order.

7

Affirmed.

**ISSUED:** April 7, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker