**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Benson C. Boyd,
Petitioner Below, Petitioner

vs.) No. 21-1012 (Berkeley County 21-AA-1)

Everett Frazier, Commissioner,
West Virginia Division of Motor Vehicles,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner Benson C. Boyd appeals the circuit court's November 16, 2021, order affirming the order of the Office of Administrative Hearings ("OAH") that affirmed the revocation of his driver's license for driving under the influence of controlled substances ("DUI").[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21.

Petitioner's driver's license was administratively revoked for DUI, and he requested an administrative hearing before the OAH. One point of contention between the parties at the hearing was whether petitioner requested a blood test. The investigating officer, Deputy William Wilhelm of the Jefferson County Sheriff's Office, noted on the DUI Information Sheet that he directed that a blood sample be taken and that petitioner did not request one.[2] At the hearing, Deputy Wilhelm could not recall whether petitioner requested a blood test or merely acquiesced to the officer's request that he produce a blood sample, but he also stated,

> In my mind, it was me asking him if he was agreeing for it. . . . [T]he way I remember it is I asked him if he was going to be willing to take a blood draw, and he said yes. I don't know if he was one of those where he definitely wanted to, or if he was just agreeing with me.

Petitioner, on the other hand, testified, "I don't remember him saying, 'Do you want a blood test' ever. I said, 'Hey, give me a blood test. I want to clear this matter up.'" Also, after his

---

[1] Petitioner appears by counsel B. Craig Manford, and respondent appears by counsel Patrick Morrisey and Elaine L. Skorich.

[2] Ultimately, a blood test was not administered because the hospital to which petitioner was transported for that purpose had no blood draw kits available.

1

release from jail on bond, petitioner obtained a urinalysis that tested for marijuana, cocaine, amphetamines, opiates, and phencyclidine. The test results were negative. Petitioner sought to admit this negative drug screen at the hearing, but respondent objected on the grounds that it was hearsay and had not been authenticated. The OAH sustained those objections.

Another point of contention between the parties bearing relevance to the blood test issue concerned a pill bottle that Deputy Wilhelm observed initially in petitioner's glove compartment as petitioner was locating documents requested by the officer. According to Deputy Wilhelm, petitioner said that the bottle held his diabetes medication. After petitioner failed every field sobriety test administered and was placed under arrest, the officer searched petitioner's vehicle and noted that the bottle was no longer in the glove compartment. Deputy Wilhelm asked petitioner where the bottle went, and petitioner claimed not to know. Petitioner also reportedly changed his story regarding the bottle's contents, claiming that it contained medication to ease pain that he had borrowed from a friend after using all of his own. Deputy Wilhelm searched around petitioner's vehicle for the bottle and located one a short distance away. The label on the bottle was worn, so Deputy Wilhelm could not determine what medication the now-empty bottle once held, but he could tell that petitioner's name was not on the label. Deputy Wilhelm surmised that petitioner tossed the bottle from his vehicle while the officer was running petitioner's information in his cruiser at the beginning of the traffic stop. At the hearing, petitioner denied that the bottle found on the roadside was his and denied that it was the same one observed by the officer in the glove compartment. Petitioner claimed, rather, that the bottle was still in his vehicle when he picked his vehicle up after his release from jail.

In its order affirming the revocation of petitioner's license, the OAH deemed petitioner's testimony on the issue of whether he requested a blood test not credible. The OAH pointed to Deputy Wilhelm's credible testimony that petitioner threw the pill bottle from his car, which the OAH found evidenced "not only a consciousness of guilt [on petitioner's part] . . . but a willingness . . . to deceive in order to avoid responsibility." The OAH also noted that petitioner's testimony on the blood test issue conflicted with Deputy Wilhelm's "recorded recollection" of the event on the DUI Information Sheet, which documented that petitioner did not request a blood test but that he was willing to submit to one. Regarding petitioner's urinalysis, the OAH reiterated that the results were not admitted into evidence and found that they were "not relevant as no chain of custody was established to prove that" petitioner provided the sample and that no witness testified to the methodology employed or results. The OAH also noted that there is no requirement that a secondary chemical test be completed to prove that a motorist was DUI for purposes of revocation, and it found sufficient other evidence of petitioner's impairment. Namely, Deputy Wilhelm initiated a stop of petitioner's vehicle because he almost struck a tow truck and crossed the center line twice. Once stopped, petitioner exhibited "[n]umerous impairment detection clues" while attempting the field sobriety tests, and he displayed consciousness of guilt by tossing the pill bottle from his car.

Petitioner appealed to the circuit court, which affirmed the OAH's decision, and he now appeals to this Court. "On appeal of an administrative order from a circuit court, this Court is

bound by the statutory standards contained in W. Va. Code § 29A-5-4(a)[3] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021) (citations omitted).

Petitioner argues in his first of two assignments of error that he requested a blood test, that the circuit court erred in concluding that his due process rights were not violated by the failure to provide the requested blood test, and that his license revocation should be reversed as a consequence of the failure to provide the blood test. We have acknowledged that West Virginia Code § 17C-5-9 "provides a driver with a statutory right to a blood test when that driver has properly invoked that right," *Dale v. Painter*, 234 W. Va. 343, 349, 765 S.E.2d 232, 238 (2014), and in Syllabus Point 6 of *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021), we identified the factors that must be considered in determining the consequences that should flow from a failure to provide a driver with a blood test demanded under West Virginia Code § 17C-5-9. But this statute—and the case law that interprets it and upon which petitioner relies in arguing for reversal of his license revocation—does not apply where a driver merely acquiesces to, but does not demand, a blood test. *Frazier v. Bragg*, 244 W. Va. 40, 45-46, 851 S.E.2d 486, 491-92 (2020). Recognizing as much, petitioner maintains that the OAH's conclusion that he did not demand a blood test was clearly wrong. The OAH's conclusion, though, was supported by its observation of petitioner's "willingness . . . to deceive" in regard to the pill bottle and the officer's notation, made near the time of petitioner's arrest, that petitioner did not request a blood test. Because the conclusion/credibility determination is not "patently without basis in the record," it is "binding" upon this Court. *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995); *see also Frazier v. Null*, 246 W. Va. 450, ---,874 S.E.2d 252, 257-58 (2022) (quoting *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995)) (noting that the OAH "had 'exclusive' authority to determine [petitioner's] credibility," and a reviewing court "ha[s] no authority to review that credibility determination"). Petitioner has failed to demonstrate error in the conclusion that he did not demand a blood test; accordingly, the authority on which he relies

---

[3]     Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. Pt. 2, *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021) (quoting Syl. Pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Hum. Rts. Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983)).

in arguing that he was denied due process is inapplicable, and this assignment of error is without merit.

In his second assignment of error, petitioner argues that the OAH erred in denying the admission of his drug screen. Although he advances several questionable bases for its claimed admissibility,[4] he does not *apply* the cited authority or otherwise explain *how* the drug screen was admissible under the identified authorities.[5] His failure to "structure an argument applying applicable law" renders this assignment of error out of compliance with this Court's rules, and we need not address it. *State v. Sites*, 241 W. Va. 430, 442, 825 S.E.2d 758, 770 (2019) (quoting Dec. 10, 2012, Admin. Ord., Re: Filings That Do Not Comply With the Rules of App. Proc.) ("'[B]riefs that . . . fail to structure an argument applying applicable law' are not in compliance with this Court's rules. Insofar as this assignment of error is inadequately briefed and fails to comply with the administrative order and our appellate rules, this Court will not address this assignment of error.").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 18, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[4] Petitioner asserts that the drug screen is excepted from the rule against hearsay as a statement made for medical diagnosis or treatment under Rule 803(4) of the West Virginia Rules of Evidence, that his own testimony authenticated it, that the OAH could have taken judicial notice of the results, and that the evidence was admissible under West Virginia Code § 29A-5-2(a) because, in the wording of that statute, "it is a type commonly relied upon by reasonable men in the conduct of their affairs."

[5] In fact, before the OAH petitioner agreed with the hearing examiner's stated bases for exclusion. When the hearing examiner stated that the drug screen document had not been authenticated, petitioner's counsel said, "That's true." And when the hearing examiner responded, "So it's hearsay," petitioner's counsel acknowledged, "That's right."