602 S.E.2d 445

**Patti A. SMITH, Appellant,**

v.

**THE WEST VIRGINIA HUMAN RIGHTS COMMISSION and UNITED PARCEL SERVICE, Appellees.**

**No. 31645.**

Supreme Court of Appeals of West Virginia.

Submitted: May 25, 2004.

Filed: July 2, 2004.

Herbert H. Henderson, Esq., Dwight J. Staples, Esq., Henderson, Henderson & Staples, Huntington, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, for the West Virginia Human Rights Commission.

David J. McAllister, Esq., Reed, Smith, Shaw & McClay, LLP, Pittsburgh, Pennsylvania, Kevin L. Carr, Esq., Spilman, Thomas & Battle, PLLC, Charleston, for Appellee United Parcel Service, Inc.

STARCHER, Justice.

In this appeal from the West Virginia Human Rights Commission ("the Commission"), we are asked to review an order setting aside the findings of two administrative law judges that an employer failed to reasonably accommodate an employee's disability. We find that the Commission applied the wrong legal standard to the employee's claim, and find that the substantial evidence on the whole record supported the findings of the administrative law judges. As set forth below, we reverse the Commission's order.

I.

*Facts & Background*

Appellee United Parcel Service, Inc. ("UPS"), is a corporation in the business of package delivery. Appellant Patti S. Smith began working for the appellee in 1980 sorting, loading and unloading packages onto and off of delivery vehicles, and after two-and-a-half years took a position as a "feeder-dispatcher," organizing the loading and unloading of vehicles. She began her employment at UPS's South Charleston facility (or "hub"), but in 1983 she transferred to a position as a "pre-load supervisor" at the UPS Huntington hub. In 1986, after three years in Huntington, the appellant accepted a job as a full-time "package car" driver, working out of the South Charleston hub.

At some point in the early 1990s, the appellant began having problems with weight-loss, crying spells, insomnia, fatigue and depression. By March 1994, the appellant was diagnosed with a history of depression. Then, in September 1994, the appellant was injured in a work-related accident. Within a week of the accident, the appellant attempted to return to work, but physical and emotional problems—some connected to her accident, many not—interfered with her job and she remained off work beginning in October 1994. The appellant underwent a hysterectomy in March 1995 in response to other physical conditions.

The appellant was released to return to work by her doctors on May 2, 1995. However, her doctors noted that she was suffering from mood disorders, personality disorders with obsessive traits, and depression. Her doctors specifically recommended to UPS that the appellant be placed in a structured work setting, essentially one where she would not be required to drive a package truck or other vehicle. The record suggests that the appellant could not function in a job where she would need to deal with the public, and that the appellant therefore could not work as a package car driver because the job entailed many uncontrollable variables which largely involved contact with the public.

The appellant specifically requested, on May 2, 1995, that she be provided with eight hours of work per day in a non-driving position. UPS was later provided with statements from the appellant's mental health providers stating that the appellant should be placed in a non-driving position inside the warehouse. UPS refused, asserting that there were only six "inside" full-time positions at the South Charleston hub, and that the appellant did not have enough seniority to "bump" any of those individuals from their positions.

Testimony presented during the course of litigation indicated that the appellant sought, in lieu of a full-time position, two part-time, non-driving jobs inside the warehouse. Furthermore, evidence was presented that three male employees who had physical impairments had been accommodated by UPS by being given "inside," non-driving positions. Each employee had been a package car driver, and upon developing a disability (for instance, one had diabetes, while another an injury to a rotator cuff) each employee was given two part-time jobs working in or around the South Charleston hub.

The appellant never returned to her position as a package car driver at UPS, and was terminated from her employment on December 5, 1995. She later took a position with a chemical company in Huntington performing work where she is never required to deal with the general public. In the meantime, the appellant filed a complaint with the appellee West Virginia Human Rights Commission ("the Commission") alleging that UPS had violated the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1 to –21, by refusing to acknowledge the appellant's disability and to accord her a reasonable accommodation.

UPS's position below was that the appellant was not disabled because she was capable of doing the package car driver job, and that therefore no accommodation was necessary. After several hearings, an administrative law judge disagreed with this position and issued a ruling on January 10, 2001, finding that the appellant had a disability in the form of depression, a disability that impaired the appellant's ability to work, and that UPS had discriminated against the appellant and failed to provide her with reasonable accommodations. The administrative law judge concluded that UPS could have accommodated the appellant by offering her a position that did not involve driving a package truck or working with the public.

The Commission reviewed the administrative law judge's order, and remanded the case for further hearings to clarify the reasoning behind the January 10, 2001 ruling. After additional hearings, on December 23, 2002, a new administrative law judge issued a 56–page ruling again finding that the appellant had a disability, and that UPS had discriminated against the appellant and failed to accommodate her disability. The administrative law judge concluded that the appellant was entitled to be reinstated with an accommodation that would allow her to work inside UPS's place of business for eight hours per day. Finally, the administrative law judge ruled that the appellant was entitled to back pay and benefits from May 2, 1995 to the present, attorney fees and costs, and damages for humiliation, embarrassment, emotional distress and loss of personal dignity.[1]

The ruling was appealed to the full Commission, and the Commission concluded that "depression is a disability cognizable under the West Virginia Human Rights Act." The Commission agreed with the findings of both administrative law judges, and found that the record supported a conclusion that the appellant suffered from depression and was disabled from performing her duties as a UPS package car driver.

However, in an order dated July 24, 2003, the Commission reversed the holdings of the administrative law judges, holding that the appellant had failed to prove that UPS engaged in unlawful discriminatory practices in May 1995 when it refused to reassign her to a less stressful, non-driving position.

The appellant now appeals the Commission's July 24, 2003 order.

II.

*Standard of Review*

In the instant appeal, the appellant challenges the legal conclusions made by the Commission. The appellee, UPS, cross-assigns as error factual and legal conclusions made by the administrative law judges and the Commission.

---

1. The administrative law judge found, on December 23, 2002, that the appellant was entitled to back pay and benefits in the amount of $115,549.23; attorney fees and costs of $75,288.14; and $3,277.45 for humiliation, embarrassment, emotional distress and loss of personal dignity.

The standard under which the Human Rights Commission reviews a decision of an administrative law judge is established by statute. *W.Va.Code,* 5–11–8(d)(3) [1998] states that:

The commission shall limit its review upon such appeals [from the administrative law judge's decision] to whether the administrative law judge's decision is:

(A) In conformity with the constitution and the laws of the state and the United States;

(B) Within the commission's statutory jurisdiction or authority;

(C) Made in accordance with procedures required by law or established by appropriate rules of the commission;

(D) Supported by substantial evidence on the whole record; or

(E) Not arbitrary, capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

■ With regard to this Court's review of the factual findings and legal conclusions made by the Commission, "this Court is bound by the statutory standards contained in W. Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996). *See also,* Syllabus Point 1, *West Virginia Human Rights Commission v. United Transportation Union, Local No. 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981)("West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties.") *W.Va.Code,* 29A–5–4 requires a court to "reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syllabus Point 2, *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983).

### III.

#### *Discussion*

■ Pursuant to the West Virginia Human Rights Act,

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:

(1) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or disabled[.]

*W.Va.Code,* 5–11–9(1) [1998]. In order to be protected by the Act, a person must first prove he or she is a person with a "disability," and the Act defines "disability" in the following manner:

(m) The term "disability" means:

(1) A mental or physical impairment which substantially limits one or more of such person's major life activities. The term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working;

(2) A record of such impairment; or

(3) Being regarded as having such an impairment.

*W.Va.Code,* 5–11–3(m) [1998].[2] *See also, Code of State Regulations* § 77–1–2 [1994]

---

2. This definition of "disability" was added to the

Act in 1989, and was effective through the dura-

(further defining "disability," "physical or mental impairment," "substantially limits," "major life activities," and other terms).

■ Both administrative law judges as well as the Commission concluded that depression is a disability cognizable under the Human Rights Act, so long as that depression impairs a major life activity, and we agree with this assessment of the Act. Furthermore, both administrative law judges and the Commission concluded that the appellant suffered from depression in May 1995, and that her depression substantially limited at least two "major life activities:" sleeping and working. Accordingly, the Commission ruled that the appellant was disabled from performing the job duties of a package car driver for appellee UPS.

The appellee, as a cross-assignment of error, vigorously asserts that the appellant was not a qualified individual with a disability on May 2, 1995, because she was not substantially limited in any of the major life activities contained in the Act. Specifically, the appellee asserts that the inability to drive a UPS package car and make deliveries throughout a nine-plus hour day is not substantial limitation upon a major life activity. After careful examination of the record, however, we reject this cross-assignment of error.

The record suggests that the appellant's depression significantly impaired her ability to interact with members of the public, and that interaction with members of the public constituted a substantial number of the duties involved with being a package car driver. Furthermore, the appellant offered expert testimony that the appellant's aversion to dealing with the public reduced the number of jobs available to the appellant by 22.7%. On this evidence, we cannot say that either of the administrative law judges or the Commission erred in finding that the appellant's disability—depression—substantially limited a major life activity.

■ We now turn to the issues raised by the appellant. The appellant contends that the Commission erred as a matter of law in its interpretation of which law governed the appellant's case. The Commission's ruling

tion of the instant case.

hinged on two discrimination cases issued by this Court—*Coffman v. Board of Regents*, 182 W.Va. 73, 386 S.E.2d 1 (1988) and *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996)—but the ruling bypassed legislatively-approved rules interpreting the Human Rights Act that were adopted in 1994. *See Code of State Regulations* § 77–1 [1994].

In 1988, this Court issued *Coffman v. Board of Regents*, and considered the case of a hospital custodian who injured her back. The custodian's doctors recommended that the custodian be given another job within the hospital, one that did not involve heavy lifting or bending. When the hospital could not find a different job for the custodian, she was terminated, and the custodian brought suit alleging she was discriminated against because of her handicap. This Court set aside a jury verdict favorable to the custodian, finding that under 1982 regulations interpreting the Human Rights Act, the hospital only had a duty to assist and reasonably accommodate the custodian in her job as a custodian; it had no duty to find her another position.

The Court in *Coffman* concluded in Syllabus Point 1 that the Human Rights Act protected a "qualified handicapped person" who was a person able and competent, *"with reasonable accommodation,* to perform the essential functions of the job in question." The Court then went on to state, at Syllabus Point 2, that an employer had no duty under the Act to reasonably accommodate a disabled employee by reassigning the employee to another position:

Under the West Virginia Human Rights Act and the accompanying regulations, "reasonable accommodation" requires only that an employer make reasonable modifications or adjustments designed as attempts to enable a handicapped employee to remain in the position for which he was hired. Where a handicapped employee can no longer perform the essential functions of that position, reasonable accommodation does not require an employer to reassign him to another position in order

8

to provide him with work which he can perform.

The Court specifically found in *Coffman* that "an employer is not required to create a special job for an employee who cannot do the one for which she was hired[.]" 182 W.Va. at 78, 386 S.E.2d at 6.

█ In 1996, the Court issued its opinion in *Skaggs* and overruled *Coffman*. The Court made clear that while the Act requires an employer to provide a disabled employee with reasonable accommodations, those accommodations to the employee's work arrangements would be assessed on a case-by-case basis, and need not be the precise accommodations requested by the employee. *See* Syllabus Point 1, *Skaggs*.[3] Moreover, the Court specifically ruled—in overruling *Coffman*—that if an employee could not be accommodated in their current job position, then the employer was required to make some effort to transfer the employee to another vacant position. As the Court stated, in Syllabus Point 4 of *Skaggs*:

> Under the West Virginia Human Rights Act, W.Va.Code, 5–11–9 (1992), once an employee requests reasonable accommodation, an employer must assess the extent of an employee's disability and how it can be accommodated. If the employee cannot be accommodated in his or her current position, however it is restructured, then the employer must inform the employee of potential job opportunities within the company and, if requested, consider transferring the employee to fill the open position. To the extent that *Coffman v. West Virginia Board of Regents*, 182 W.Va. 73, 386 S.E.2d 1 (1988), is inconsistent with the foregoing, it is expressly overruled.

Finally, the Court specifically stated in *Skaggs* that its holdings would not be retroactive because:

> To apply our new ruling retroactively in this case would be unfair and would punish

the defendant for what may have been an attempt to comply with the law as it existed at the time of the plaintiff's discharge. Therefore, we hold that the ruling in this case will apply prospectively only.

198 W.Va. at 70, 479 S.E.2d at 580.

The facts of the instant case arose in May 1995, before the Court's interpretation of the Act in *Skaggs*. The appellee argued below, and the Commission agreed, that because the 1996 holdings in *Skaggs* applied prospectively only, the *Coffman* case controlled the Commission's deliberations. Accordingly, accepting the appellee's arguments, the Commission determined that in May 1995, UPS only had a duty to accommodate the appellant in her position as a package car driver. Because the appellant's disability precluded her from performing that job, under *Coffman* the Commission determined that UPS did not "engage in an unlawful discriminatory practice, W.Va.Code § 5–11–9(a), when it refused to accommodate the [appellant's] disability by making alternative positions available to her, specifically, two part time jobs doing less stressful warehouse work."

The appellant argues that the Commission erred because it overlooked regulations promulgated by the Commission, and approved by the Legislature, in 1994. These regulations interpret the phrase "reasonable accommodation" contained within the Act, and state in pertinent part:

> 4.5. An employer shall make reasonable accommodation to the known physical or mental impairments of qualified individuals with disabilities where necessary to enable a qualified individual with a disability to perform the essential functions of the job. Reasonable accommodations include, but are not limited to:
>
> . . .
>
> 4.5.2. Job restructuring, part-time or modified work schedules, reassignment to

3. Syllabus Point 1 of *Skaggs v. Elk Run Coal. Co.*, 198 W.Va. 51, 479 S.E.2d 561 (1996), states:

Under the West Virginia Human Rights Act, W.Va.Code, 5–11–9 (1992), reasonable accommodation means reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as attempts to enable an individual with a disability to be

hired or to remain in the position for which he or she was hired. The Human Rights Act does not necessarily require an employer to offer the precise accommodation an employee requests, at least so long as the employer offers some other accommodation that permits the employee to fully perform the job's essential functions.

a vacant position for which the person is able and competent . . . to perform[.]

*Code of State Regulations* § 77–4.5.2.

The appellant asserts that any regulation that is proposed by an agency and approved by the Legislature is a "legislative rule" that has the force of law. The State Administrative Procedures Act, *W.Va.Code*, 29A–1–2(d) [1982], defines a "legislative rule" in the following manner:

"Legislative rule" means every rule . . . proposed or promulgated by an agency pursuant to this chapter. Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule.

Our review of the State Administrative Procedures Act leads us to conclude that the appellant is correct. A regulation that is proposed by an agency and approved by the Legislature is a "legislative rule" as defined by the State Administrative Procedures Act, *W.Va.Code*, 29A–1–2(d) [1982], and such a legislative rule has the force and effect of law.

The appellant contends that because *Code of State Regulations* § 77–4.5.2. was proposed by the Commission and approved by the Legislature in 1994, that regulation had the force and effect of law in May 1995. The appellee counters that the regulation has no application to this case, but that if it does, the regulation only requires "reassignment to a vacant position." The appellee then asserts that the record in the instant case establishes that there were no vacant, non-driving positions within the company, so were the regulation even to apply the appellee asserts the Commission's finding that no discrimination occurred is correct.

We reject the appellee's position. We find that the legislative rule, *Code of State Regulations* § 77–4.5.2. [1994], had the force and effect of law when it was approved by the Legislature in 1994. When the appellant

requested an accommodation in her job in May 1995, the appellee made no effort to restructure the appellant's job, nor any effort to give the appellant part-time or modified work schedules, nor any effort to reassign the appellant to a vacant position for which she was able and competent. The record presented before both administrative law judges supports a conclusion that appellee UPS had vacant positions within its South Charleston hub for which the appellant was able and competent, but made no effort to inform the appellant of these positions.

On this record, we cannot say that the factual determinations by the administrative law judges were arbitrary or capricious. Their findings that the appellee discriminated against the appellant and failed to reasonably accommodate her disability are supported by substantial evidence on the whole record, and it was error for the Commission to hold otherwise.

## IV.

### *Conclusion*

After careful consideration of the evidence and testimony, the briefs and arguments of the parties, and all other matters of record, we conclude that the Human Rights Commission erred in setting aside the judgment of the administrative law judges. Accordingly, the Commission's July 24, 2003 order is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Chief Justice MAYNARD concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

Justice DAVIS concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

Justice ALBRIGHT concurs and reserves the right to file a concurring opinion.

MAYNARD, Chief Justice, concurring, in part, and dissenting, in part.

I concur with the majority's holding in Syllabus Point 4 of this opinion which recog-

nizes that "[d]epression is a disability cognizable under the Human Rights Act, so long as that depression impairs a major life activity." I dissent in this case, however, because I do not believe the evidence showed that UPS had vacant positions within its South Charleston facility which the appellant was able and competent to perform, and therefore, failed to reasonably accommodate her disability.

It is undisputed that in May 1995, there were only six full-time (eight-hour per day) non-driving positions at the South Charleston facility and none of those positions were vacant. It is also undisputed that the appellant did not have the seniority to "bump" any of the employees holding those six positions. Under *Coffman v. West Virginia Board of Regents*, 182 W.Va. 73, 78, 386 S.E.2d 1, 6 (1988) which applies to this case,[1] "an employer is not required to *create* a special job for an employee who cannot do the one for which she was hired[.]" (Emphasis added). Thus, there was no vacant full-time position to which the appellant could be assigned.

While the appellant testified during a July 1999 hearing that she would have accepted two-part time positions, there is evidence in the record that directly contradicts her testimony. Apparently, when the appellant first became disabled, UPS indicated that it might be willing to permit her to work two separate part-time shifts inside the South Charleston facility until she was released by her doctor to returned to work as a "package car" driver. In response to this offer, the appellant specifically indicated that she did not want to work two part-time jobs.

Based on the evidence discussed above, I fail to see how the majority concluded that UPS never made any effort to reassign the appellant to a vacant position and failed to make any effort to give the appellant part-time or modified work schedules. I believe that the majority essentially concluded that since UPS is a large corporation which employs many people, it could have and should have reasonably accommodated the appellant's disability by providing her another job in its South Charleston facility. Such a decision is unfair. Our rule regarding what constitutes a reasonable accommodation should apply to all employers alike, whether they are large corporations or sole proprietorships.

Accordingly, for the reasons set forth above, I concur, in part, and dissent, in part, to the decision in this case. I am authorized to state that Justice Davis joins me in this separate opinion.

ALBRIGHT J., concurring.

The majority opinion in the instant case upholds the reasoning and conclusions of, not one, but two administrative law judges. Two judges listened to the testimony of numerous witnesses. Those same two judges reviewed dozens of exhibits. The two judges concluded that the appellee, United Parcel Service ("UPS"), had vacant positions inside the South Charleston hub, and that UPS failed to even attempt to accommodate appellant Patti Smith's disability by offering her one of those positions.

My dissenting colleagues suggest that UPS offered testimony that "directly contradicts" the appellant's testimony about whether UPS offered the appellant a vacant position, but that the majority of this Court, contrary to UPS's evidence, concluded otherwise. My dissenting colleagues overlook the fact that neither of the two administrative law judges who heard the testimony believed that UPS ever offered the appellant a vacant position.

The majority opinion simply concludes that the Commission applied the wrong legal standard to the evidence—and in doing so, incorrectly concluded that UPS had no legal obligation to offer the appellant a vacant position. Because the Commission did not apply its own 1994 regulation (which required UPS to offer the appellant a vacant position) to the case, the majority opinion was compelled to set aside the Commission's

---

**1.** As noted by the majority, *Coffman* was overruled by *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996). However, *Coffman* applies in this case because the Court's ruling in *Skaggs* was expressly noted as applying prospectively only. *Skaggs*, 198 W.Va. at 70, 479 S.E.2d at 580.

decision and reinstate the decision of the two administrative law judges.

This Court does not sit as a fact-finder in cases appealed from the Human Rights Commission, and is bound by the record from the tribunals below. The majority opinion reflects that the Commission erred in the law it applied to the factual record; once the correct law was applied, the decision of the administrative law judges to grant the appellant relief was therefore clearly correct.

I respectfully concur.