618 S.E.2d 592

**HEETER CONSTRUCTION, INC., Appellant,**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION, and Peter Kelly, Octavia E. Binder, Kerry L. Walker, Timothy E. Boykins, Sherri Thomas, and Andrea Thomas–Pauley, Appellees.**

No. 32512.

Supreme Court of Appeals of West Virginia.

Submitted June 8, 2005.

Decided July 8, 2005.

Concurring Opinion of Justice Starcher July 12, 2005.

**584**

James M. Cagle, Charleston, West Virginia, Attorney for the Appellant, Heeter Construction, Inc.

Harry P. Henshaw, III, Charleston, West Virginia, Amicus Curiae on behalf of Heeter Construction, Inc.

Darrell V. McGraw, Jr., Attorney General, Paul R. Sheridan, Deputy Attorney General, Charleston, West Virginia, Attorney for the Appellee, West Virginia Human Rights Commission.

PER CURIAM:

Heeter Construction, Inc. (hereinafter "Heeter") appeals from a final judgment order entered June 30, 2004, by the West Virginia Human Rights Commission (hereinafter "the Commission"). By that order, the Commission affirmed the decision of the administrative law judge (hereinafter "ALJ") as to liability and damages, finding Heeter engaged in unlawful discriminatory hiring practices. On appeal, Heeter argues that the hearing procedure was not conducted in a fair and impartial manner.[1] Based upon the parties' arguments,[2] the record designated for our consideration, and the pertinent au-

---

1. Heeter also set forth various other assignments of error; however, the manner in which we resolve this case disposes of our need to address Heeter's other assertions on appeal. Our decision in this case also discharges our duty to address the merits of the Commission's finding that Heeter engaged in unlawful discriminatory hiring practices.

2. We wish to acknowledge the contribution of an amicus curiae who filed a brief in this case on Heeter's behalf. We value the contribution made in this case and will consider the brief in conjunction with the parties' arguments.

thorities, we reverse the decision of the Commission, and remand the case for a new hearing.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Heeter is a heavy construction firm and was hired by the West Virginia Division of Highways to widen two portions of Route 10 near Man, West Virginia. A local office was opened and work began in March 2000. Peter Kelly, Octavia Binder, Kerry Walker, Timothy Boykins, Sherri Thomas, and Andrea Thomas–Pauley (hereinafter the "Complainants") all applied for jobs as flaggers or rock truck drivers on Heeter's Route 10 project. All of the Complainants are African American, and none were hired by Heeter.

Each of the Complainants filed a claim alleging that Heeter was guilty of discriminatory hiring practices under The West Virginia Human Rights Act. W. Va.Code § 5–11–1, *et. seq.* All Complainants alleged racial discrimination, and some Complainants also alleged discrimination based on sex and/or age. The Commission investigated and found probable cause, and the cases were consolidated and set for hearing. Evidence relating to the allegations of discrimination, as well as Heeter's defenses thereto, was heard over an eight-day period before an ALJ. To lay the foundation for our decision in this case, it is important to note some of the colloquies that occurred during the eight days of hearings.

A review of the record reveals that counsel for both parties[3] engaged in many disagreements on the record throughout the proceedings. One of the more disrupting discussions on record occurred on day three when counsel for the Commission accused Heeter's counsel of obtaining personnel information without securing a proper release from the affected employee. The ALJ noted that "I'm hearing accusatory remarks from both sides." As the discussion progressed, the following exchange occurred:

[Commission's counsel]: Jeez.

[Heeter's counsel]: Judge, I'm going to ask him not to use curse words during the hearing.

[Commission's counsel]: I said Jesus. Is that a curse word?

[Heeter's counsel]: Absolutely. That's taking the Lord's name in vain.

[Commission's counsel]: I'm terribly sorry. I know how committed you are to christian charity.

[Heeter's counsel]: Judge, if you don't put some order in this Court, I am leaving. And I will submit the proper things I need to submit to the Bar, because no [one] is going to curse and say anything about my religion. Or sit in here and laugh.

[Commission's counsel]: This is her 2000—

[ALJ]: Hold it.

[Heeter's counsel]: That is it. That is it. If you don't have any more control over a courtroom than this, Judge.

[ALJ]: [A]re you going to abandon your client during the middle of a hearing?

. . . .

[ALJ]: I'm giving you both warnings. I've given you both warnings about this.

[Heeter's counsel]: I am not going to sit in a hearing and have someone use the Lord's name in vain and make religious remarks to me. I am not going to do it. Not for you, Judge, and not for any other Judge. And no other Judge would ask me to do that. And while we're on the record, I want him to put on the record what specifically he called [Heeter's co-counsel], because I think all this needs brought to light.

[ALJ]: Very well.

[Commission's counsel]: I'm sorry, Your Honor.

[ALJ]: If we can both please sit down and continue with the hearing. I am not going to tell him he cannot say Jesus in the hearing.

. . . .

---

**3.** We note that counsel before the ALJ is not the same counsel presenting and responding to the current petition for appeal before this Court.

[Heeter's co-counsel]: I think he's engaging in religious discrimination. He's supposed to be a civil rights attorney.

[Heeter's counsel]: That is right. This is—and I want on the record what he called [co-counsel], because this whole scenario needs exposed, Judge, that you're allowing people to carry on in a courtroom in this manner.

Thereupon, counsel for the Commission stated that Heeter's co-counsel called him "a dick under his breath", which was denied, and counsel for the Commission stated that he responded by calling Heeter's co-counsel a "[j]erkoff." As the discussion progressed, Heeter's counsel moved for the ALJ to recuse himself and the following discussion was held on the record:

[Heeter's counsel]: May I please, Judge, just to get this for the record. That you're going to allow him to make those remarks in front of me which are highly religiously offensive to me. I think that for whatever reason you have a desire to protect [Commission's counsel] in these proceedings, of which I don't know why, but I'm going to ask that you recuse yourself and give us another hearing examiner that I think will see this case without partiality.

[ALJ]: Okay. And your grounds for my recusal are because I am protecting [Commission's counsel] for reasons you don't know?

[Heeter's counsel]: Yes. And not only are you protecting him for reasons I don't know, when we asked that something be done about both his language and his religious remarks, rather than do anything in this courtroom regarding that matter, you make accusations against [Heeter's co-counsel]. And I think that is blatantly obvious that something is wrong and I don't feel that based on that you're going to see that this courtroom is under order or that you're going to give us an impartial hearing.

[ALJ]: [Y]our motion is denied. And I resent the accusations that I am not trying my best to maintain order. And I resent the fact that you think I am protecting one side or the other in this matter over the interests of one party or the other.

The hearing progressed and on day four, Heeter's counsel accused the Commission's counsel of "making faces" at her and further accused the ALJ of "allowing it," to which the ALJ responded, "I've had it with you, [Heeter's counsel]. I've had it." Further evidence of the conduct exhibited during the hearings occurred on day six when the Commission's counsel questioned a witness about a recently-deceased employee of Heeter. During questioning, the Commission's counsel stated to the witness "[y]ou haven't spoken to him recently, have you," which he then stated was a "joke." Co-counsel for Heeter then asked the Commission's counsel if he wanted to "make fun of any more dead people," to which the Commission's counsel replied "[o]nly when you die."

The hearing continued to be punctuated by contestable behavior and the last day of hearings, on day eight, contained the following exchange:

[Heeter's counsel]: Judge, I'd like to put on the record this morning that after I gave that [motion for contempt] to [Commission's counsel], that he came in the hall, threatened me, pointed his finger in my face, and called me a s-h-i-t head, and I would also like on the record what he said to my client.

[Commission's counsel]: Judge, she's being dishonest, flat out, undeniably dishonest. I didn't threaten her. I didn't call her what she says I called her. I called her a chicken.... The fact of the matter is that things did happen yesterday, words were exchanged after the hearing. I overreacted to some deliberately provocative conduct by [Heeter's co-counsel], and for that reason, I am responsible, because I have yet to learn that when individuals like [Heeter's co-counsel] and like [Heeter's counsel], who deliberately try and push your buttons in order to get you angry, in order to get you to react, are doing it not because of any other reason than to get you to—to make you vulnerable to these kinds of ridiculous charges.

. . . .

[Commission's counsel]: This is deliberate conduct. [Heeter's counsel] stated as

much yesterday that she was deliberately trying to provoke me, and it worked. And to that point, I am pathetic, and I am miserable. I've been in this hearing for nine days, listening and observing what I—you know, I have never in my life observed members of the bar behaving in the way that these two individuals have behaved.

. . . .

[Heeter's co-counsel]: Well, Judge, I want to say one thing. First of all, he is putting the blame on his unprofessional conduct, tortious conduct, and saying that I provoked him. I have never provoked him. He has always been the instigator. All I did was packing up and leaving, and he called me an a-hole. I didn't even respond. [Heeter's counsel] addressed it, and then he started using f-bombs and everything else. I told him he was not worth my time, and he wanted to provoke a fight. He called me a chicken shit, got up into my face, was yelling. He's not worth my time, and I thought it was pathetic.

At the conclusion of the hearings, the ALJ found that Heeter discriminated in its hiring practices based on the impermissible considerations of race, age, and sex. More specifically, the ALJ found that Peter Kelly was discriminated against on the basis of race, and awarded him back pay, prejudgment interest, and money for humiliation, embarrassment, emotional distress, and loss of personal dignity. It was also found that Octavia Binder was discriminated against on the basis of race and age. Ms. Binder was awarded back pay, prejudgment interest, and money for humiliation, embarrassment, emotional distress, and loss of personal dignity. The ALJ further found that Kerry Walker would not have been hired by Heeter, even if the impermissible factors of race and sex had not been considered. Despite this finding, the ALJ awarded Mr. Walker money for humiliation, embarrassment, emotional distress, and loss of personal dignity. According to the ALJ's findings, Timothy Boykins was discriminated against on the basis of race and age. Mr. Boykins was awarded back pay, prejudgment interest, and money for humili-

ation, embarrassment, emotional distress, and loss of personal dignity. Additionally, Complainant Sherri Thomas, as found by the ALJ, would not have been hired by Heeter, even if the impermissible factor of race had not been considered. Despite this finding, the ALJ awarded Ms. Thomas money for humiliation, embarrassment, emotional distress, and loss of personal dignity. Finally, the ALJ found that Heeter would not have hired Andrea Thomas–Pauley, even if the impermissible factor of race had not been considered. Despite this finding, the ALJ awarded Ms. Thomas–Pauley money for humiliation, embarrassment, emotional distress, and loss of personal dignity.

Further, the ALJ found that Heeter articulated legitimate, non-discriminatory reasons for the failure to hire the Complainants because Heeter hires family, friends, and those persons recommended by family, friends, and other trusted business associates. However, the ALJ found that the Complainants proved by a preponderance of the evidence that although a legitimate, non-discriminatory reason was involved in the hiring decisions, the impermissible factor of race was a factor for all Complainants, and age and sex were additional impermissible factors for some Complainants.

The ALJ ordered Heeter to pay the West Virginia Office of the Attorney General, Civil Rights Division, costs of $120.28, as reimbursement of travel expenses, and to the West Virginia Human Rights Commission costs of $6,408.60, as reimbursement of its witness fees and deposition and hearing transcript costs. The Commission, by its June 30, 2004, order, affirmed the decision of the ALJ finding liability for unlawful discriminatory practices, and awarding damages. Heeter appealed the Commission's decision directly to this Court.

## II.

### STANDARD OF REVIEW

This case is before this Court on appeal from the Commission's ruling finding that Heeter engaged in unlawful discriminatory hiring practices. The parties appealed directly to this Court pursuant to W. Va.

Code § 5–11–11 (1989) (Repl.Vol.2002). Under this Code provision, we recognize that parties appeal final orders of the Commission to this Court, but have the option to appeal to the Kanawha County Circuit Court under certain circumstances. We have previously held, in reviewing cases appealed from the circuit court,

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Syllabus Point 2, *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

Syl. pt. 3, *Smith v. West Virginia Human Rights Comm'n*, 216 W.Va. 2, 602 S.E.2d 445 (2004).

We have recently clarified this standard when a party chooses to petition this Court directly on appeal. In that regard, we have stated:

> Where an appeal from an order issued by the West Virginia Human Rights Commission is brought directly to the West Virginia Supreme Court of Appeals, pursuant to W. Va.Code § 5–11–11 (1989) [Repl. Vol.2002], this Court will apply the same standard of review that is applied to Human Rights Commission orders appealed to a circuit court.

Syl. pt. 1, *Cobb v. West Virginia Human Rights Comm'n*, 217 W. Va. 761, 619 S.E.2d 274 (No. 31854, July 7, 2005).

Mindful of these applicable standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The primary issue presented for resolution by this Court is whether the hearing was conducted in such a manner as to be partial and unfair. Before this Court, Heeter argues that the hearing process was conducted in an unfair and partial manner.[4] Heeter relies on the lack of control that the ALJ exhibited over the parties and counsel, and further contends that the ALJ should have recused himself during the proceedings. This argument is based on statistics regarding the ALJ's record of decisions and his alleged bias in favor of complainants and against employers. Heeter complains that when the hearing lacks proper decorum, dignity and professionalism, no party is afforded a fair hearing. The Commission alleges that while improper conduct was observed during the hearing, it was caused or induced by Heeter's counsel, and was not the conduct of the ALJ.

The crux of our decision necessarily rests on the hearings before the ALJ, and whether they afforded all parties a fair and impartial atmosphere. Specifically, we note that "[a]ll persons appearing before the West Virginia Human Rights Commission shall have their rights, privileges, or duties determined with due regard for fundamental fairness .... all parties thereto shall be provided ... a fair hearing." W. Va.C.S.R. § 77–2–1.1.1 (1999). Further, "[t]he administrative law judge may exclude from the hearing room or from further participation in the [proceeding] any person who engages in improper conduct, including a party to the proceeding, attorney of record, a witness engaged in testifying, or an observer." W. Va.C.S.R. § 77–2–7.33 (1999). By way of example, we also note that, in hearing matters, the Commission's administrative law judge is afforded "all pow-

---

4. *See* note 1, *supra,* regarding other assignments of error.

ers necessary to conduct fair and impartial hearings including, but not limited to, the power: ... To regulate the course of the hearing and the conduct of parties and their counsel." W. Va.C.S.R. § 77–8–7.2.6 (1992) (discussing powers of the West Virginia Human Rights Commission under the West Virginia Fair Housing Act, W. Va.Code § 5–11A–1, *et. seq.*).

To effectuate these goals, the Commission was authorized

> [t]o do all other acts and deeds necessary and proper to carry out and accomplish effectively the objects, functions and services contemplated by the provisions of this article, including the promulgation of legislative rules in accordance with the provisions of article three [§§ 29A–3–1 et seq.], chapter twenty-nine-a of this code, implementing the powers and authority hereby vested in the commission.

W. Va.Code § 5–11–8(h) (1998) (Repl.Vol. 2002). Although the Code of Judicial Conduct states that "[t]he Code does not apply to an administrative law judge, hearing examiner, or similar officer within the executive branch of government," W. Va.Code of Judicial Conduct, Canon 6(A) Commentary, (1994), the regulations governing proceedings such as the one below specifically direct that "[t]he conduct of the administrative law judge shall, where applicable, be guided by the Judicial Code of Ethics.[5]" W. Va.C.S.R. § 77–2–7.4a (1999). To this end, "[an administrative law] judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." W. Va.Code of Judicial Conduct, Canon 1 (1994). Moreover, "[a] judge shall require order and decorum in proceedings before the judge[,]" and "[a] judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers ... subject to the judge's direction and control." W. Va.Code of Judicial Conduct, Canon 3, (B)(3—4) (1994).

■ Applying these regulations and judicial canons to the facts of this case, it is clear that even if the Commission's argument is accepted as true that Heeter's counsel caused or induced the improper conduct, it is still the responsibility of the ALJ to maintain control and decorum during its proceedings. The ALJ had the duty to conduct a fair and impartial hearing, and is afforded the power to remove counsel from the room to achieve this goal. The record amply demonstrates that the ALJ failed to keep the parties' counsel under control, which in turn, deprived all parties of a fair and impartial hearing. The Commission argues that a new hearing merely rewards Heeter's counsel for bad behavior; however, we disagree. All parties are afforded the right to create the record. In many instances, Heeter's counsel vouched the record with issues relating to conduct of the Commission's counsel. Because the ALJ did not remove himself from presiding over the hearing, Heeter's counsel had no alternative but to spread objections upon the record and such proffers were necessary to afford this Court, who was not present at the hearings, the opportunity to evaluate the behavior of counsel, both verbal and nonverbal.[6]

Finally, "[a] judge shall not ... by words or conduct manifest bias or prejudice ... based upon ... religion ... and shall not permit ... others subject to the judge's direction and control to do so." W. Va.Code of Judicial Conduct, Canon 3(B)(5) (1994). Moreover, "[a] judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon ... religion ... against parties, witnesses, counsel, or others." W. Va.Code of Judicial Conduct, Canon 3(B)(6) (1994). It is apparent that the ALJ not only overlooked one counsel's use of the Lord's name in vain, but more importantly, allowed

---

**5.** The Judicial Code of Ethics was superseded by the Code of Judicial Conduct, effective January 1, 1993.

**6.** The record contains numerous instances of inappropriate nonverbal behavior. Most distressing is the fact that the ALJ did absolutely nothing to stop the inappropriate nonverbal behavior and thus further failed to maintain control of the proceeding.

counsel to continue to argue over the semantical use of the name, whether it be in a civil or religious context. The point of the hearing was to determine whether the Complainants were victims of discriminatory hiring practices. The ALJ's failure to maintain control over the proceedings stripped the Complainants of the opportunity to fairly present their case, and further denied Heeter the right to adequately defend itself against the allegations.[7] Therefore, because no parties received a fair and impartial hearing, the decision of the Commission is reversed, and this case is remanded for a new hearing.[8]

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the June 30, 2004, order of the West Virginia Human Rights Commission. Further, we remand the matter for a fair and impartial hearing, and for further proceedings consistent with this opinion.

Reversed and Remanded.

STARCHER, J., concurring:

(Filed July 12, 2005)

I concur in the majority's ruling that a new hearing should occur. But I do not join in the majority opinion's selective quotations from the record.

The full record in the instant case shows that two intelligent and zealous lawyers worked hard over a number of long days to adduce important evidence and make solid arguments. Both lawyers fought hard for their positions. (The record also shows an ALJ who mistakenly tolerated several angry exchanges by the lawyers. Most judges would not have been so tolerant.)

To excerpt from a lengthy record a few pages of embarrassing "slips" by these lawyers is unnecessary. I would have simply characterized and summarized the lawyers' exchanges.

Accordingly, I concur.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

7. This Court is cognizant of the fact that this is the second case before us during this term of Court that involves this particular ALJ. *See Cobb v. West Virginia Human Rights Comm'n*, 217 W. Va. 761, 619 S.E.2d 274 (No. 31854, July 7, 2005). A review of the *Cobb* case lends further support to our determination that this particular ALJ has acted in an unfair and partial manner. We now have before us two instances when this ALJ's written orders, along with his lack of control during the hearing process, illustrate manifestations of bias and prejudice. Of particular concern in the instant case is the allegation that this ALJ has a bias toward complainants and against employers. While we do not have before us cross-examined evidence allowing us to make that determination, we feel compelled to comment that the ALJ's award of money damages in the present case to three non-prevailing parties certainly does not alleviate our concerns. The ALJ specifically found that Kerry Walker, Sherri Thomas, and Andrea Thomas-Pauley would not have been hired by Heeter, even if the impermissible factor of race had not been considered. Despite this finding by the ALJ, he still awarded money to these three parties for humiliation, embarrassment, emotional distress, and loss of personal dignity.

8. We note that counsel for Heeter sought the recusal of the ALJ during the third day of the hearing process. On remand, we fully anticipate that the parties will seek the recusal or disqualification of the ALJ. There is a proper method, based on the regulations, by which parties may seek the removal of a particular ALJ. W. Va. C.S.R. § 77-2-7.4.b (1999). We encourage the parties to take full advantage of these procedures set forth by the Commission.