617 S.E.2d 524

**WEST VIRGINIA UNIVERSITY/RUBY MEMORIAL HOSPITAL, Appellant Below, Appellee**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION, on Behalf of Peggy J. Prince, and Peggy J. Prince, Individually, Appellees Below**

**Peggy J. PRINCE, Appellee Below, Appellant.**

**No. 31759.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2005.

Decided May 13, 2005.

Dissenting Opinion of Justice Starcher July 12, 2005.

176

of the appellant and appellee below, Peggy J. Prince, in her disability discrimination case against the appellee and appellant below, West Virginia University (hereinafter "WVU"). Specifically, the WVHRC found that WVU had unlawfully discriminated against Ms. Prince in failing to accommodate her disability by placing her in another position. The WVHRC awarded Ms. Prince back pay in the amount of $111,054.90 plus statutory interest, front pay at the rate of $25,160.00 per year until she was placed in a suitable position, $3,277.45 in incidental damages, and $35,289.28 for attorney's fees.

In reversing the final order of the WVHRC, the circuit court concluded that WVU did not discriminate against Ms. Prince and that any discriminatory acts by Ms. Prince's immediate supervisor, Sharon Savage, who was an employee of West Virginia University Hospitals, Inc.,[1] could not be imputed to WVU. In this appeal, Ms. Prince contends that the circuit court abused its discretion by finding that the acts of West Virginia University Hospitals, Inc., could not be attributed to WVU when the evidence showed that they worked together with respect to decisions regarding her employment. Ms. Prince also contends that the circuit court erred by ignoring the findings of fact of the WVHRC regarding WVU's failure to accommodate her disability by placing her in another position.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is affirmed.

Alex J. Shook, Esq., Hamstead, Williams & Shook, Morgantown, West Virginia, Attorney for Peggy Prince.

Darrell V. McGraw, Jr., Esq., Attorney General, Elaine L. Skorich, Esq., Assistant Attorney General Charleston, for West Virginia University.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on February 17, 2004. In that order, the circuit court reversed a decision of the West Virginia Human Rights Commission (hereinafter "WVHRC") in favor

I.

FACTS

Ms. Prince began her employment with WVU in 1979 as a nurse's aide. In 1984, the Legislature created West Virginia University Hospitals, Inc., (hereinafter "WVUH"), a nonstock, not-for-profit corporation, to take over and operate the medical facilities owned

---

1. West Virginia University Hospitals, Inc., is also known as Ruby Memorial Hospital. Despite the style of this case, Ruby Memorial Hospital did not participate in the hearings and proceedings below and is not a party in this appeal.

and operated by WVU. *See* W.Va.Code §§ 18–11C–1 to –10. Pursuant to W.Va.Code § 18–11C–4(d) (1984), existing employees were each given the option of remaining a WVU employee, i.e., a state employee, or becoming an employee of WVUH. Ms. Prince chose to remain a WVU employee.

In 1986, Ms. Prince became a patient escort. Her duties included transporting patients to and from various departments at the hospital by walking with them if they were ambulatory or pushing them in a stretcher, wheelchair, or bed along with other necessary items such as oxygen tanks and IV apparatuses. In April 1993, Ms. Prince began having bleeding episodes as a result of varicose veins in her legs.[2] She consulted a vascular surgeon and underwent surgery in May 1993. She returned to her job a few weeks later, but continued to have bleeding episodes from two slow-healing wound sites over the next few months causing her to be sporadically absent from work.

Ms. Prince underwent a second surgical procedure in October 1993. According to Ms. Prince, she was released to return to work on October 6, 1993. However, when she reported to work, her supervising nurse, Sharon Savage, refused to accept her oral representation that she was able to perform her duties. On October 26, 1993, Ms. Prince obtained a written letter from her vascular surgeon which released her to return to work without restrictions. Nonetheless, Ms. Savage would not allow Ms. Prince to return to her job without additional medical documentation. Ms. Prince remained on medical leave and was subsequently placed on catastrophic leave.

In November 1993, Ms. Savage informed WVU's human resource personnel that she had doubts that Ms. Prince was able to perform her duties as a patient escort. Thereafter, Ms. Prince's family physician and her vascular surgeon were asked to complete functional capacity assessment reports. Their reports were reviewed by a vocational expert who advised that Ms. Prince was "unable to perform the essential duties of her job as a Patient Escort."

WVU then attempted to find Ms. Prince another job and placed her on a special monitoring status which gave her first preference for any position for which she was qualified. WVU says that it was unsuccessful in finding Ms. Prince another job, in part, because of her lack of clerical skills. Ms. Prince claims, however, that she applied for multiple positions at WVU and WVUH between November 1993 and September 1994, but that WVU took the position that she was unqualified to perform any work which required any physical activity and excluded her from consideration on that basis for many of the positions for which she applied. Ms. Prince's employment with WVU was terminated on September 12, 1994.

On July 20, 1995, Ms. Prince filed a complaint with the WVHRC alleging that WVU had discriminated against her on the basis of her disability by terminating her employment instead of placing her in another position. Ms. Prince further alleged that after she was terminated, WVU also denied her employment in a multitude of positions for which she applied further violating the West Virginia Human Rights Act, W.Va.Code § 5–11–9 (1992).[3] Upon a finding of probable cause to believe that the Human Rights Act had been

---

**2.** Ms. Prince has had lifelong problems with varicose veins and obesity.

**3.** W.Va.Code § 5–11–9 (1992) provided, in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:

(1) For an employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or handicapped: Provided, That it shall not be unlawful discriminatory practice for an employer to observe the provisions of any bona fide pension, retirement, group or employee insurance or welfare benefit plan or system not adopted as a subterfuge to evade the provisions of this subdivision[.]

W.Va.Code § 5–11–9 was amended in 1998. The only modification to the provision quoted above was the substitution of the word "disabled" for "handicapped."

violated, the case was assigned to an administrative law judge (hereinafter "ALJ") for hearing. Following hearings in December 1998 and January 1999, the ALJ issued a final decision on June 10, 1999, finding that WVU unlawfully discriminated against Ms. Prince by failing to accommodate her disability by placing her in the position of Assignment Assistant with the Office of Housing and Resident Life at WVU. The ALJ awarded Ms. Prince back pay in the amount of $111,054.90 plus statutory interest. Ms. Prince was also awarded front pay in the amount of $25,160.00 per year until she was placed in a suitable position. Finally, Ms. Prince was awarded $6,544.90 in incidental damages and $35,289.28 in attorney's fees.

WVU filed an appeal with the WVHRC on July 14, 1999. On February 3, 2000, the WVHRC affirmed the ALJ's final order, but modified the amount of incidental damages to $3,277.45 without interest.[4] On March 13, 2000, WVU filed an appeal with the Circuit Court of Kanawha County. On February 17, 2004, the circuit court issued a final order which reversed the WVHRC decision and found in favor of WVU. This appeal followed.

## II.

## STANDARD OF REVIEW

As set forth above, Ms. Prince has appealed the circuit court's decision which reversed the final order of the WVHRC. It is well-established that:

"Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions, or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful proce-

dures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syllabus Point 2, *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

Syllabus Point 3, *Smith v. The West Virginia Human Rights Comm'n*, 216 W.Va. 2, 602 S.E.2d 445 (2004). With regard to our review of the circuit court's order, this Court held in Syllabus Point 1 of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996) that:

On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

This Court has also stated that, "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." Syllabus Point 1, *West Virginia Human Rights Comm'n v. United Transp. Union, Local No. 655*, 167 W.Va. 282, 280 S.E.2d 653 (1981). With these standards in mind, we now consider the parties' arguments.

## III.

## DISCUSSION

As noted above, upon review of the final order of the WVHRC, the circuit court determined that any discriminatory acts on the part of Ms. Prince's immediate supervisor, Sharon Savage, an employee of WVUH, could not be imputed to WVU. As her first assignment of error, Ms. Prince argues that the circuit court erred by reversing the decision of WVHRC on this basis because WVU did not assert that it could not be held liable

---

4. The WVHRC also deleted and replaced one conclusion of law reached by the ALJ.

for the actions of Ms. Savage until after the ALJ rendered his decision. In other words, Ms. Prince says that because the issue was not raised during the hearing before the ALJ, it was waived and could not be asserted for the first time on appeal. In support of her argument, Ms. Prince relies upon this Court's holding in Syllabus Point 2 of *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996), which states that, "To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect."

By contrast, WVU maintains that the issue was timely raised before the WVHRC and the circuit court. Furthermore, WVU says that pursuant to *Cooper*, Ms. Prince herself waived her right to allege error in this appeal because she never objected when the issue was presented to the WVHRC and the circuit court. We agree.

Having thoroughly reviewed the record, we find that Ms. Prince failed to object when the issue was brought before the WVHRC and the circuit court and, therefore, waived her right to raise the issue in this appeal. As we explained in *Cooper*, "The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." 196 W.Va. at 216, 470 S.E.2d at 170. *See also Hanlon v. Logan County Board of Education*, 201 W.Va. 305, 315, 496 S.E.2d 447, 457 (1997) ("Long standing case law and procedural requirements in this State mandate that a party must alert a tribunal as to perceived defects at the time such defects occur in order to preserve the alleged error for appeal.").

Ms. Prince next contends that the circuit court erred by finding that WVU could not be held liable for Ms. Savage's discriminatory acts. Ms. Prince says that in reaching this conclusion, the circuit court ignored the evidence which showed that WVU employees Colleen Lankford and June Blosser participated in the decisions regarding her employment. However, the evidence shows, and the ALJ so found, that it was Ms. Savage who refused to allow Ms. Prince to return to work in October 1993. Ms. Savage did not contact Ms. Lankford and Ms. Blosser until almost a month later at which time she advised that Ms. Prince might not be able to perform the essential functions and duties of a patient escort. At that point, WVU initiated the process to have Ms. Prince undergo a functional capacity assessment.

It is clear that WVU was unaware of any discriminatory intent or actions on the part of Ms. Savage. Although this Court has held that "[i]f a discriminatory act has been committed by an officer or a supervisory employee, an employer may be held liable without showing that the employer knew or reasonably should have known of the misconduct, except where the supervisory employee was acting outside the scope of his employment," Syllabus Point 7, *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990), Ms. Savage was not an employee of WVU. She was an employee of WVUH which is clearly a separate legal entity. *See Queen v. West Virginia University Hospitals, Inc.*, 179 W.Va. 95, 99, 365 S.E.2d 375, 379 (1987) (recognizing that WVUH and WVU are separate entities pursuant to Article 11C of Chapter 18 of the West Virginia Code). Consequently, the circuit court did not err in finding that WVU cannot be held liable for the acts of Ms. Savage.

We note that Ms. Prince does not argue that WVU is vicariously liable for Ms. Savage's actions.[5] Rather, she maintains that

---

5. Even if Ms. Prince had made such an argument, there is no basis to hold WVU vicariously liable for the acts of Ms. Savage. Syllabus Point 5 of *Paxton* provides:

There are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of *respondeat superior*: (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

The evidence in the record established that WVUH, not WVU, controlled the day-to-day activities of Ms. Savage. Furthermore, WVU did not have the power to hire or fire Ms. Savage. There simply was no employer-employee relationship between Ms. Savage and WVU. Therefore, Ms. Savage cannot be viewed as having acted as an agent for WVU when she refused to allow Ms. Prince to return to work in October

WVU participated in discriminatory acts against her. However, other than the refusal to allow her to return to work in October 1993, an action on the part of Ms. Savage and not WVU, we have found no evidence of any acts of discrimination toward Ms. Prince. As discussed above, once WVU was advised that Ms. Prince might not be able to perform the duties of a patient escort, her family physician and her vascular surgeon were sent functional capacity assessment forms to complete. Thereafter, WVU consulted a vocational expert who, after reviewing the functional capacity assessment reports, advised that Ms. Prince could not perform the essential functions of a patient escort. WVU then placed Ms. Prince on a special monitoring status for a period of four months and attempted to find her another position.

Recently, this Court determined that regulations promulgated and approved by the Legislature in 1994 interpreting the phrase "reasonable accommodation" as set forth in the West Virginia Human Rights Act, W.Va. Code § 5-11-9, were effective upon passage and required employers to accommodate qualified individuals with disabilities by, *inter alia*, "[j]ob restructuring, part-time or modified work schedules, [or] reassignment to a vacant position for which the person is able and competent ... to perform." *Smith v. The West Virginia Human Rights Comm'n*, 216 W.Va. 2, 8-9, 602 S.E.2d 445, 451-52 (2004) (quoting W.Va.C.S.R. § 77-4.5.2 (1994)).[6] The record in this case indicates that WVU went above and beyond these requirements in its efforts to accommodate Ms. Prince's disability.

In that regard, evidence presented during the hearing before the ALJ showed that efforts were made to accommodate Ms. Prince by lightening her work load upon her return from her first surgery in May 1993. In particular, she was allowed to refrain from doing heavier work such as pushing beds. Nonetheless, her problems continued, and she was sporadically absent from work. The ALJ found that Ms. Prince could have performed her job by wearing high pressure support stockings. However, WVU had no knowledge of this possible accommodation until the hearing before the ALJ in 1998. Absent such knowledge, it cannot be said that WVU failed to provide a reasonable accommodation.

Once WVU determined that Ms. Prince could no longer perform the essential functions and duties of a patient escort, Ms. Prince was considered for a number of jobs with WVU and WVUH. Specifically, she was considered for the positions of postal worker, inventory clerk, sterile processing technician, dental assistant, office assistant, and building service worker. However, Ms. Prince's physical limitations disqualified her from a number of these jobs while her lack of clerical skills disqualified her from others. Ms. Prince took several typing tests, but was ultimately only able to type twenty words per minute. The entry level clerical jobs for

---

1993, and any discriminatory intent on her part cannot be imputed to WVU.

**6.** We note that prior to the passage of W.Va. C.S.R. § 77-4.5.2 (1994), this Court had held in Syllabus Point 2 of *Coffman v. West Virginia Board of Regents*, 182 W.Va. 73, 386 S.E.2d 1 (1988), that:

Under the West Virginia Human Rights Act and the accompanying regulations, "reasonable accommodation" requires only that an employer make reasonable modifications or adjustments designed as attempts to enable a handicapped employee to remain in the position for which he was hired. Where a handicapped employee can no longer perform the essential functions of that position, reasonable accommodation does not require an employer to reassign him to another position in order to provide him with work which he can perform.

In 1996, in Syllabus Point 4 of *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996), this Court overruled *Coffman* and held:

Under the West Virginia Human Rights Act, W.Va.Code, 5-11-9 (1992), once an employee requests reasonable accommodation, an employer must assess the extent of an employee's disability and how it can be accommodated. If the employee cannot be accommodated in his or her current position, however it is restructured, then the employer must inform the employee of potential job opportunities within the company and, if requested, consider transferring the employee to fill the open position. To the extent that *Coffman v. West Virginia Board of Regents*, 182 W.Va. 73, 386 S.E.2d 1 (1988), is inconsistent with the foregoing, it is expressly overruled.

This Court further held that this ruling would apply prospectively only. *Skaggs*, 198 W.Va. at 70, 479 S.E.2d at 580.

which she applied required typing skills of at least forty words per minute.

Ms. Prince also argues that the circuit court erred by ignoring the finding of the ALJ and WVHRC that she should have been placed in the position of Assignment Assistant with the Office of Housing and Resident Life at WVU. Contrary to the ALJ's findings though, the evidence indicated that clerical and computer work were essential functions of the job, accounting for as much as fifty percent of the duties. As noted above, Ms. Prince did not have adequate typing or clerical skills.

In summary, we find no error with regard to the circuit court's finding that any discriminatory intent or actions on the part of Ms. Savage in not allowing Ms. Prince to return to work in October 1993 cannot be imputed to WVU. Furthermore, we find no evidence that WVU discriminated against Ms. Prince. The record clearly establishes that Ms. Prince was not capable of performing the essential functions of her job as a patient escort as a result of her disability. Once that determination was made, WVU made every effort to place her in another position at WVU or WVUH. However, Ms. Prince simply failed to qualify for any of the vacant positions.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on February 17, 2004, is affirmed.[7]

Affirmed.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

STARCHER, J., dissenting:

(Filed July 12, 2005)

I dissent because there was substantial evidence that supported the Human Rights Commission's ruling.

There is a symbiotic, day-to-day operational relationship between WVU and WVUH

that belies any "separate entity" claim. *See* Syllabus Point 10, *Queen v. University Hospitals,* 179 W.Va. 95, 365 S.E.2d 375 (1987).

Moreover, the "separate entity" claim by WVU was never even considered by the HRC—because WVU did not raise it before the HRC.

In the proceedings before the HRC, WVU presented an ever-changing "moving target" series of purported non-discriminatory explanations for its conduct. Each explanation, as it arose, was shot out of the water by the actual evidence.

Then, at the circuit court level, with the record closed, WVU brought up the "separate entity" argument for the first time—at a time when Ms. Prince was precluded from offering more evidence to show the ongoing cooperation of the two entities in discriminatory conduct. Ms. Prince was simply "sandbagged."

I would affirm the HRC's ruling. Accordingly, I dissent.

---

7. Since our decision affirms the final order of the circuit court, we need not address the additional

arguments made by WVU.